******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## DARCY YUILLE *v*. LAURENCE V. PARNOFF ET AL.
### (AC 40381)

Keller, Prescott and Pellegrino, Js.

*Syllabus*

The plaintiff sought to recover damages for, inter alia, conversion and statutory theft from the defendant P, who had represented the plaintiff in an arbitration matter, claiming that P had misappropriated funds that had been held in escrow pending resolution of a dispute of the parties concerning attorney's fees in the arbitration matter. After the jury returned a verdict in favor of the plaintiff on the counts alleging conversion and statutory theft, the trial court rendered judgment in part for the plaintiff, from which P appealed to this court. *Held*:

1. P could not prevail on his claim that the trial court abused its discretion by ordering him to commence trial after allowing his attorney to withdraw, without affording him time to obtain new counsel: the court specifically found that P was responsible for the breakdown in the attorney-client relationship by refusing to cooperate with his attorney and to give the attorney the authorization necessary to work on the case, P, who had been informed that the court would consider a current letter from a medical provider stating that it would jeopardize P's physical or mental well-being to appear in court, did not attach a letter containing such a statement to his motion to remove the case from the trial list, at the time the case was ordered for trial it was three and one-half years old, the issues presented were not complex, and, as a matter of docket management, the court had the discretion to schedule the matter for trial; accordingly, under the circumstances here and on the basis of the continuing pattern of dilatory behavior evidenced by P, the court did not abuse its discretion by ordering that the parties commence trial.

2. P could not prevail on his claim that the verdict in favor of the plaintiff on the counts of conversion and statutory theft was irreconcilably inconsistent with the verdict in his favor on the count alleging breach of fiduciary duty, which was based on his claim that the jury could not have found a conversion or theft of the funds at issue without also finding that he had a fiduciary obligation to the plaintiff to maintain those funds for her benefit; although the jury had answered no to an interrogatory that asked whether it found that P had advanced his own interest, to the detriment of the plaintiff, acting as her attorney, P failed to negate the reasonable hypothesis that the jury concluded that he was not acting as the plaintiff's attorney at the time that he converted the funds, and, thus, the jury's answer to the interrogatory could be harmonized with the verdict.

3. P's claim that the trial court improperly declined to submit his special defense of waiver to the jury was unavailing; there having been no evidence in the case to support a finding that the plaintiff had waived her right to recover the disputed funds, the trial court properly declined to submit the special defense of waiver to the jury.

Argued November 13, 2018—officially released April 9, 2019

*Procedural History*

Action to recover damages for, inter alia, conversion, and for other relief, brought to the Superior Court in the judicial district of Fairfield where the court, *Radcliffe, J.*, bifurcated the case as to the defendant Barbara A. Parnoff; thereafter, the matter was tried to a jury; verdict and judgment in part for the plaintiff, from which the named defendant appealed to this court. *Affirmed.*

*John R. Williams*, for the appellant (named

defendant).

*Kenneth M. Rozich*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. The defendant, Laurence V. Parnoff[1] (Parnoff), appeals from the judgment rendered, following a jury trial, in favor of the plaintiff, Darcy Yuille, on the counts of Yuille's complaint alleging conversion and statutory theft. On appeal, Parnoff claims that (1) the trial court abused its discretion by ordering him to commence trial on extremely short notice, (2) the verdict in Yuille's favor on counts one and two is irreconcilably inconsistent with the verdict in Parnoff's favor on count three, and (3) the court improperly declined to submit any of the special defenses to the jury. We disagree and, accordingly, affirm the judgment of the trial court.[2]

The following facts, as set forth in the prior opinions of this court in *Parnoff* v. *Yuille*, 139 Conn. App. 147, 57 A.3d 349 (2012) (*Parnoff I*), cert. denied, 307 Conn. 956, 59 A.3d 1192 (2013) and *Parnoff* v. *Yuille*, 163 Conn. App. 273, 136 A.3d 48 (*Parnoff II*), cert. denied, 321 Conn. 902, 138 A.3d 280 (2016), and procedural history are relevant to our resolution of the defendant's claims.[3] In 1998, Yuille retained Parnoff to represent her in an action against Bridgeport Hospital. *Parnoff I*, supra, 152. The parties' fee agreement provided for a contingent fee of 40 percent. Id. On June 29, 2004, an arbitration panel awarded Yuille $1,096,032.93 in damages. Id., 153. Parnoff sent an invoice to Yuille that included an attorney's fee representing 40 percent of the gross settlement proceeds. Id. Yuille objected to the fee and Parnoff subsequently brought an action against Yuille to recover the fee. Id., 154. Parnoff's action alleged breach of contract, quantum meruit and bad faith. Id., 154–55. Following a trial, the jury found in favor of Parnoff on the breach of contract counts and, thus, did not reach the quantum meruit count. Id., 157–58.

On appeal, this court held that the parties' fee agreement exceeded the cap contained in General Statutes § 52-251c and, therefore, was unenforceable as against public policy. Id., 169, 172. This court reversed the judgment in favor of Parnoff on the breach of contract counts and ordered that those counts be dismissed on remand. Id., 173. The trial court later rendered judgment for Yuille on the quantum meruit count, which this court affirmed on appeal, concluding that an attorney "who is barred from contract recovery because of the contract's failure to comply with the fee cap statute cannot recover under the doctrine of quantum meruit." *Parnoff II*, supra, 163 Conn. App. 275, 277.

In 2013, Yuille commenced the present action alleging that Parnoff had misappropriated funds that had been held in escrow pending resolution of the parties' fee dispute. The operative amended complaint alleged conversion, statutory theft pursuant to General Statutes § 52-564,[4] and breach of fiduciary duty. At the conclu-

sion of the evidence, the court denied Parnoff's motion for a directed verdict. The jury returned a verdict in favor of Yuille on the counts alleging conversion and statutory theft, and for Parnoff on the count alleging breach of fiduciary duty. The court subsequently rendered judgment for Yuille on the conversion and statutory theft counts in the total amount of $1,480,336.37. Parnoff then filed the present appeal. Additional facts will be set forth as necessary.

I

Parnoff first claims that the court abused its discretion by ordering that he commence trial after allowing his attorney to withdraw, without affording him time to obtain new counsel. We disagree.

We first set forth our standard of review. "The trial court has a responsibility to avoid unnecessary interruptions, to maintain the orderly procedure of the court docket, and to prevent any interference with the fair administration of justice. . . . In addition, matters involving judicial economy, docket management [and control of] courtroom proceedings . . . are particularly within the province of a trial court. . . . Accordingly, [a] trial court holds broad discretion in granting or denying a motion for a continuance. Appellate review of a trial court's denial of a motion for a continuance is governed by an abuse of discretion standard that, although not unreviewable, affords the trial court broad discretion in matters of continuances." (Citations omitted; internal quotation marks omitted.) *Peatie* v. *Wal-Mart Stores, Inc.*, 112 Conn. App. 8, 12, 961 A.2d 1016 (2009).

The following facts are necessary for the resolution of this claim. Yuille commenced this action in 2013. There was little activity in the case between December 4, 2013, when Parnoff filed his answer and special defenses, and January 26, 2017, when the court, *Bellis, J.*, ordered that trial was to begin on January 31, 2017.[5] On January 30, 2017, Yuille filed a reply to Parnoff's special defenses. Also on January 30, 2017, counsel for Yuille filed a motion to continue the case until March 1, 2017, on the ground that he had only recently been retained by Yuille. The court denied Yuille's motion, stating: "The defendants, indeed all parties were fully aware that their case was exposed to trial on one hour's notice as their counsel at the time were all told and agreed to same when the court granted yet another continuance in a very old case. As it turned out, the parties were given [five] days notice of their trial date rather than the one hour's notice."

On January 30, 2017, Attorney Michael S. Lynch, on behalf of the law firm of Bai, Pollock, Blueweiss & Mulcahey, P.C. (law firm), filed a motion to withdraw the law firm's appearance as counsel for Parnoff and Barbara A. Parnoff. The basis for the motion was that

"the attorney-client relationship [did] not exist in that there [was] a severe breakdown in communication between attorney and clients and the attorney is not authorized to represent or act on behalf of the clients." Specifically, after noting the complicated history between these parties and the disputed attorney's fees, the motion indicated that in December, 2016, Parnoff had advised in writing that the law firm was required to obtain his authorization prior to performing any further work on his file. After attending the status conference in which the matter was ordered to trial, Lynch indicated that he repeatedly requested authorization from Parnoff to work on the file; Parnoff, however, did not provide the necessary authorization. Under these circumstances, Lynch and the law firm requested permission to withdraw their appearance in this matter.

At the hearing on the motion to withdraw on February 2, 2017, the court, *Bellis*, *J.*, stated: "[B]efore I hear from either or both of the Parnoffs, I just want to point out that the case is very old, that there's been four trial dates in it, and there will not be a continuance of the trial date. I do note that . . . there was a motion for stay that was filed back in September, 2015, asking for a stay for the purposes of the *Parnoff* v. *Yuille* case to be decided as opposed to any other case, and so there was a brief stay but that was years into the case.

"So when the case was last continued, counsel at the time on both sides were informed that I would reluctantly grant . . . that latest continuance but that when the decision was issued by the Connecticut Supreme Court, that the case would be on one hour's notice and it would . . . immediately proceed to trial because, quite frankly, I did not want to continue the case the last time.

"So here we are. The case is on trial. It will not be continued again due to the age of the case and the many continuance requests . . . ."

Over the course of the hearing on the motion to withdraw, Lynch reiterated what he had stated in his motion, namely, that he did not have the ability to defend Parnoff because Parnoff had not authorized him to do the work. The court questioned Parnoff regarding whether he would cooperate with counsel; Parnoff, however, did not provide a clear response to the court's questions. The court considered a letter from Parnoff to Attorney Charles Fleischmann of the law firm, dated December 14, 2016, in which Parnoff notified the law firm that it should not perform any further work for which he would be billed without his written approval. The court also considered a series of emails from Lynch to Parnoff in which Lynch notified Parnoff of the court's January 26, 2017 order setting deadlines for the filing of trial management reports and proposed stipulations of fact. Parnoff, however, had not authorized Lynch to proceed.

At the conclusion of the hearing on the motion to withdraw, the court stated: "Well . . . I'm going to find good cause to grant the motion. I'm going to find that there is a breakdown in the relationship and communications, and I'm going to find further that it was caused, Attorney Parnoff, by your refusal to cooperate with your attorney based on the information and evidence before me, and that you put Attorney Lynch in a no-win position where he was not given—where he was attempting to do what was required to do to defend you properly, and that you—your instructions to him were to not do anything and you did not respond, so there is not any way that he can properly represent you based on all this information."[6] Before court adjourned on February 2, 2017, Parnoff indicated that he was going to try to find an attorney to represent him during the trial but that he did not know how long it was going to take. In response, the court stated that "[i]t was your choice not to cooperate with your attorney and not to give him authorization to do what needed to be done, so because of that I'm not going to continue the case."

On February 3, 2017, Parnoff informed the court that he was on medication and was not practicing as a commissioner of the Superior Court. The court stated that it had previously informed all counsel that, with respect to a continuance, it would consider a current letter from a medical provider indicating that it would jeopardize Parnoff's physical or mental well-being to appear in court. Such a letter was not provided to the court. The court also noted that Parnoff had an active law license and remained a commissioner of the Superior Court.[7]

On February 7, 2017, Barbara A. Parnoff filed a motion for a continuance in which she requested that the matter be removed from the trial list in order for her to find an attorney to represent her in the matter. The same day, Parnoff filed a motion to remove the case from the trial list to allow reasonable time for trial preparation. In his motion, Parnoff stated that he had worked on this case with Attorney Paul Pollock of the law firm, who had retired, and Fleischmann, who had not responded to his December, 2016 letter. He indicated that he first learned that this case was ordered to trial on January 26, 2017, when he was in court on an unrelated matter. Parnoff did not state in the motion, however, that he was going to find another attorney to represent him. He stated, rather, that "[n]either the undersigned nor his wife have any experience as defense attorneys or in defense litigation and both have long-standing medical conditions for which treatment is continuing . . . ." Parnoff attached, as an exhibit to his motion, a letter from an outpatient mental health treatment coordinator indicating that Parnoff had a medical appointment scheduled for February 7, 2017.

Prior to jury selection on February 7, 2017, the court, *Radcliffe, J.*, considered Parnoff's motion to remove

the case from the trial list. At that time, Parnoff described this motion as "a motion to get the thing off the trial list; to stop with the proceedings and . . . have [this matter] placed on a trial list in a period of time that unrepresented people who thought they were being represented for the last three or four years have an opportunity to get trial counsel." Judge Radcliffe initially referred both motions to Judge Bellis, as she had previously ruled on these issues. After consulting with Judge Bellis, however, Judge Radcliffe bifurcated the matter as to Barbara A. Parnoff and ordered that jury selection would begin that afternoon in the case against Parnoff. The evidence in the case against Parnoff commenced on February 14, 2017, almost two weeks after the date that Judge Bellis had set for the commencement of trial.

In support of his argument that the trial court abused its discretion by ordering him to commence trial on extremely short notice, Parnoff points out that this was a complex case and both sides had promptly requested that the matter be continued. He contends that the case was old because of the many collateral appeals and that the prior continuance requests were appropriate. He further argues that a continuance would not have had an adverse impact upon the witnesses or the reliability of the evidence, and that he had submitted medical evidence demonstrating his inability to cope with the complexity of the matters at hand. Finally, Parnoff contends that the denial of the continuance had a devastating impact upon his ability to defend the action. Specifically, Parnoff contends that throughout all of the lawsuits and appeals over the years originating from this set of facts, he had never represented himself. He contends that, in addition to the disputed funds at issue, this case also involved his license to practice law, and that he should not have been expected to represent himself in the matter.

On the basis of our review of the record, we disagree with Parnoff that the court abused its discretion by ordering this matter to trial. It is important to note that six years had elapsed between June 29, 2004, the date that Yuille received her arbitration award in this matter; *Parnoff I*, supra, 139 Conn. App. 153; and July 26, 2010, the date that Parnoff misappropriated the funds that had been placed in escrow pending resolution of the parties' dispute. Another six and one-half years had passed before the court's January 26, 2017 order directing that this matter was scheduled for trial. During this time, in addition to *Parnoff I*, supra, 147, and *Parnoff II*, supra, 163 Conn. App. 273, Yuille had also filed a grievance against Parnoff, alleging that he had violated the Rules of Professional Conduct by transferring and commingling the funds; this proceeding resulted in a formal reprimand being issued against Parnoff. *Disciplinary Counsel* v. *Parnoff*, 324 Conn. 505, 511, 513, 152 A.3d 1222 (2016). Moreover, Parnoff, an attorney

with an active law license, as noted by the trial court, was a party to all of this litigation and would have had firsthand knowledge of the underlying proceedings and complicated history involving the disputed funds.

In the present case, the court specifically found that Parnoff was responsible for the breakdown in the attorney-client relationship by refusing to cooperate with Lynch and to give him the authorization necessary to work on the case. It was for this reason the court stated that it was not going to grant a continuance to Parnoff after granting Lynch's motion to withdraw. Parnoff was informed that the court would consider a current letter from a medical provider stating that it would jeopardize his physical or mental well-being to appear in court. Although Parnoff attached a letter to his motion to remove the case from the trial list, that letter indicated that Parnoff had an appointment on February 7, 2017, and did not state that it would jeopardize Parnoff's physical or mental well-being to appear in court.

At the time this case was ordered for trial, it was over three and one-half years old and the parties' fee dispute had been the subject of multiple related lawsuits. Prior to the court's January 26, 2017 order, this case had previously been set down for trial on September 24, 2014, September 24, 2015, and November 17, 2015. Five pretrial conferences had also been scheduled.[8] Moreover, despite the complicated history of this case, the issues presented in this matter were not complex. The court had the discretion, as a matter of docket management, to schedule this matter for trial. See *Peatie* v. *Wal-Mart Stores, Inc.*, supra, 112 Conn. App. 12.

Under these circumstances, and on the basis of the continuing pattern of dilatory behavior evidenced by Parnoff, we conclude that the court did not abuse its discretion by ordering that the parties commence trial.

II

Parnoff next claims that the verdict in Yuille's favor on the counts alleging conversion and statutory theft is irreconcilably inconsistent with the verdict in Parnoff's favor on the count alleging breach of fiduciary duty, and that he is, therefore, entitled to have the verdict set aside. We disagree.

The following facts are necessary for the resolution of this claim. The operative complaint alleged conversion, statutory theft, and breach of fiduciary duty. The factual basis for each of these causes of action was the same. Specifically, Yuille alleged that in 1998, she retained Parnoff to represent her in an action against her employer. After prevailing in this action and receiving an arbitration award in the amount of $1,096,032.93, she learned that her fee agreement with Parnoff, pursuant to which Parnoff was to receive a fee of 40 percent of her recovery, violated a state statute. She, therefore, disputed Parnoff's entitlement to a fee of $438,413.17.

On November 16, 2004, Yuille agreed that Parnoff could pay himself $125,000 from the 40 percent he was claiming as a fee, on the condition that the balance of the fee would be held in escrow pending resolution of the fee dispute. That same day, Parnoff established an account in his name as trustee for Yuille in which he placed the balance of the disputed fee.[9]

According to Yuille's complaint, in March, 2005, Parnoff commenced an action against her claiming that she had breached her contract with him by refusing to pay him the full 40 percent contingency fee provided in the parties' retainer agreement. Following trial in that case, the jury awarded Parnoff $252,044.27. On July 13, 2010, the court rendered judgment in accordance with the verdict. Yuille alleged that despite the automatic stay provisions of Practice Book § 61-11, and the fact that the entitlement to the disputed funds remained undecided pending appeal of Parnoff's prior action, on July 26, 2010, Parnoff transferred the sum of $363,960.87 from the escrow account to his personal account, thus misappropriating the funds from the 2004 arbitration award. Yuille further alleged that as a result of the decisions by this court in *Parnoff I*, supra, 139 Conn. App. 147, and *Parnoff II*, supra, 163 Conn. App. 273, she was entitled to the full amount of the funds that Parnoff held in escrow prior to the July 26, 2010 transfer.

At the conclusion of the trial, the jury returned a verdict for Yuille in the amount of $363,960.87 on the conversion count and $1,091,882.61 on the statutory theft count, for a total of $1,455,843.48 in damages.[10] The jury returned a verdict for Parnoff on the count alleging breach of fiduciary duty. An interrogatory submitted to the jury on the breach of fiduciary duty count asked: "Do you find that the defendant, Laurence V. Parnoff, advanced his own interest, to the detriment of the plaintiff, Darcy Yuille, acting as her attorney?" The jury responded "NO" in response to this interrogatory.

According to Parnoff, the sole basis for Yuille's conversion and statutory theft claims was that the specific funds in question had been sequestered in his Interest on Lawyers' Trust Account for her benefit, and that he thereafter took those funds from that account and placed them in his personal account. Parnoff contends that the jury could not have found a conversion or theft of those funds without also finding that he had a fiduciary obligation to Yuille to maintain those funds for her benefit.[11] Parnoff argues that, because the verdict is irreconcilable and inconsistent, it must be set aside and a new trial ordered.

"When a claim is made that the jury's answers to interrogatories in returning a verdict are inconsistent, the court has the duty to attempt to harmonize the answers." (Internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 270, 698 A.2d 838 (1997). "The role of an appellate court where

an appellant seeks a judgment contrary to a general verdict on the basis of the jury's allegedly inconsistent answers to such interrogatories is extremely limited. . . . To justify the entry of a judgment contrary to a general verdict upon the basis of answers to interrogatories, those answers must be such in themselves as conclusively to show that as [a] matter of law judgment could only be rendered for the party against whom the general verdict was found; they must [negate] every reasonable hypothesis as to the situation provable under the issues made by the pleadings; and in determining that, the court may consider only the issues framed by the pleadings, the general verdict and the interrogatories, with the answers made to them, without resort to the evidence offered at the trial." (Citation omitted; internal quotation marks omitted.) Id., 269–70. "A verdict that is inconsistent or ambiguous should be set aside." *Kregos* v. *Stone*, 88 Conn. App. 459, 470, 872 A.2d 901, cert. denied, 275 Conn. 901, 882 A.2d 672 (2005).

In the present case, the interrogatory submitted to the jury asked whether it found that Parnoff had advanced his own interest, to the detriment of Yuille, *acting as her attorney*. Parnoff has not negated the reasonable hypothesis that the jury concluded that he was not acting as Yuille's attorney at the time that he converted the funds. In fact, Yuille's complaint alleged that, on November 16, 2004, after the parties' fee dispute arose, Parnoff established an account in his name as trustee for Yuille in which he placed the balance of the disputed fee and that Parnoff had sued Yuille to recover the full 40 percent of the contingency fee in March, 2005. It was a reasonable hypothesis for the jury to believe that at the time Parnoff converted the funds in 2010, he was no longer acting as Yuille's attorney. Accordingly, because the jury's answer to the interrogatory can be harmonized with the verdict, Parnoff cannot prevail on his claim that the verdict is irreconcilably inconsistent.

### III

Parnoff's final claim is that the court improperly declined to submit his special defense of waiver to the jury.[12] We disagree.

The following facts are necessary for the resolution of this claim. On December 4, 2013, Parnoff filed his answer and special defenses. The special defenses alleged, inter alia, that Yuille's claims were barred by the doctrines of equitable estoppel, unjust enrichment, res judicata and collateral estoppel. The special defenses also alleged that Yuille had failed to mitigate damages, had breached the implied covenant of good faith and fair dealing, and had waived possession of the funds by failing to file a counterclaim or seek affirmative relief to obtain a right to the possession of the funds.[13] On January 30, 2017, in response to the court's order,

Yuille filed a reply to Parnoff's special defenses.

On February 14, 2017, after the trial had commenced, Parnoff filed an amended answer and special defenses. In addition to the allegations contained in the December 4, 2013 special defenses, the amended special defenses alleged that Yuille's claims were barred by the doctrine of unclean hands, the applicable statutes of limitations and the doctrine of accord and satisfaction. The amended special defenses also alleged that any amounts due to Yuille should be reduced and set off by certain other sums. Yuille did not file a reply to the amended answer and special defenses.[14]

Prior to the start of the evidence, the court indicated that it would charge the jury on Parnoff's special defenses if they were supported by the evidence; the court commented, however, that it "[had not] seen anything that [it] could really charge on at [that] point." During a break in the cross-examination of Yuille, the court again indicated that it would submit Parnoff's special defenses to the jury if there was any evidence to support them.[15] During the court's charge to the jury, the court stated that "there are various defenses which were raised here by way of a special defense in which [Parnoff] made claims that notwithstanding the claims made by [Yuille] that she could not recover for . . . one or more of these bases. And the court has examined the special defenses. And I am not going to instruct you on, nor should you consider, any of the special defenses raised in this case." The court then proceeded to charge on the claims raised by Yuille, namely, conversion, statutory theft and breach of fiduciary duty.[16]

On appeal, Parnoff argues that he is entitled to a new trial based on the court's failure to charge on the special defense of waiver.[17] He contends that he was denied the right to have the jury decide an issue of fact fairly presented by the pleadings and the evidence. Specifically, Parnoff refers to defendant's exhibit L, an affidavit signed by Yuille in a prior related action, *Parnoff* v. *Mooney*, Superior Court, judicial district of Fairfield, Docket No. CV-04-4001683-S. In this affidavit, Yuille averred that she hired Attorney Laura Mooney in 1996 in connection with a workplace injury she sustained in 1995 while employed at Bridgeport Hospital. In 1997, Yuille authorized Mooney to pursue a bad faith claim against the hospital for its bad faith handling of her workers' compensation claim. In 1998, Yuille retained Parnoff to represent her in a wrongful termination claim. Yuille averred that, to her recollection, she did not authorize Parnoff to bring a bad faith claim, as she had already hired Mooney to handle that claim. She later learned, however, that Parnoff had also brought a bad faith claim on her behalf.

According to the affidavit, after Parnoff advised Yuille of the arbitration award in her favor on the bad faith claim he had brought, Yuille advised Parnoff that the

contingency fee of 40 percent that he was seeking to collect was too high. The affidavit further states that "[i]n any event, I told Parnoff that any fee from the award should be split between him and Mooney, since it was my understanding that they were working together and he had used her work to prosecute my case." After Parnoff refused to share the fee, she asked that the fee from the award be held in escrow pending resolution of the fee dispute. On the basis of this affidavit, Parnoff contends that Yuille waived any claim that she might have against him and in favor of Mooney, who was not a party to this action.[18] We disagree with Parnoff that this affidavit constitutes evidence in support of his special defense of waiver.

"It is well established that waiver is the intentional relinquishment or abandonment of a known right or privilege." (Internal quotation marks omitted.) *Worth Construction Co.* v. *Dept. of Public Works*, 139 Conn. App. 65, 70, 54 A.3d 627 (2012). "[T]o determine the presence of waiver, there must be evidence of intelligent and intentional action by the [plaintiff] of the right claimed to be waived. . . . It must be shown that the party understood its rights and voluntarily relinquished them anyway. . . . Each case should be considered upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the party that is waiving its rights." (Internal quotation marks omitted.) Id., 71.

The affidavit by Yuille directing that Parnoff split the fee with Mooney does not constitute an intentional relinquishment or abandonment of Yuille's rights regarding the disputed funds. At best, Yuille's statement in her affidavit is an assertion that Parnoff and Mooney should split the fee *to which they were legally entitled* rather than split the fee that violated the statutory cap on contingent fees contained in § 52-251c. Moreover, as the court correctly pointed out when discussing this affidavit at trial, "[t]here is no claim by Attorney Mooney in this case—Attorney Mooney is not a party in this case, nor is she claiming any title, as far as this court is aware, to any of the monies that were contained in the certificate of deposit account and were later deposited in a personal account by the defendant."[19] With regard to whether Yuille had waived her right to the disputed funds, the court was presented with evidence that Yuille had retained counsel and defended her interest in the disputed funds from the inception of the lawsuit in *Parnoff I*, supra, 139 Conn. App. 147, through the denial of certification by the Supreme Court in *Parnoff II*, supra, 163 Conn. App. 273.

"In determining whether the trial court improperly refused to give a requested charge, we review the evidence presented at trial in the light most favorable to supporting the proposed charge. . . . A request to charge which is relevant to the issues of [a] case and

which is an accurate statement of the law must be given. . . . If, however, the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . . Thus, a trial court should instruct the jury in accordance with a party's request to charge [only] if the proposed instructions are reasonably supported by the evidence." (Citation omitted; internal quotation marks omitted.) *National Publishing Co.* v. *Hartford Fire Ins. Co.*, 287 Conn. 664, 671, 949 A.2d 1203 (2008). Because the evidence in this case did not support a finding that Yuille had waived her right to recover the disputed funds, we conclude that the court properly declined to submit that special defense to the jury. See id.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Barbara A. Parnoff was also named as a defendant in this action. On February 7, 2017, the trial court bifurcated this matter as to Barbara A. Parnoff, with the matter proceeding only as against Laurence V. Parnoff.

[2] In her brief, Yuille claimed, as an alternative ground for affirming the judgment of the trial court, that Parnoff's appeal was untimely, as it was filed more than twenty days after the verdict was accepted. Yuille withdrew this claim during oral argument before this court, and, therefore, we need not consider it in this opinion.

[3] The trial court in this matter took judicial notice of the prior Appellate Court opinions.

[4] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

[5] The order provided: "This matter is on trial. Trial management reports are to be filed by 5 p.m. on Monday, January 30, 2017. Proposed stipulations of fact are to be filed by Tuesday at 9 a.m. Each party is to bring all exhibits, premarked for identification, on Tuesday morning."

[6] On appeal, Parnoff has not challenged the court's conclusion that he was to blame for the breakdown in the attorney-client relationship.

[7] The transcript reveals the following colloquy:

"The Court: [W]hat I don't have is a letter from a medical provider. As I told your counsel at the time, what I do not have is a letter from your medical provider saying that it would jeopardize your physical or mental health or well-being to appear at court, because that is the standard. Everyone—we all, we—all of us have different conditions, but—

"[Parnoff]: Your Honor, I—

"The Court: —there is—no, Mr. Parnoff, you can't interrupt me. You know better. So right now you have an active license and right now you are a commissioner of the Superior Court, so that's just how it is. You haven't offered your resignation, so you are a commissioner of the Superior Court and I'm talking to you as a commissioner of the Superior Court."

[8] The file reflects that pretrial conferences were scheduled on April 23, 2015, May 14, 2015, June 4, 2015, July 15, 2015, and August 4, 2015.

[9] According to the complaint, on November 16, 2004, Parnoff deposited the sum of $971,032.93 into the trust account, representing the balance remaining from the original award of $1,096,032.93 less the $125,000 that Parnoff paid himself. On or about the same date, Parnoff disbursed payments for costs and payment to Yuille for her share of the proceeds, leaving a balance remaining in the trust account of $313,413 as the amount of the disputed fee.

[10] The jury awarded treble damages on the statutory theft count, pursuant to § 52-564. See footnote 4 of this opinion. Yuille also recovered prejudgment interest in the amount of $24,492.89 for a total judgment of $1,480,336.37, subject to postjudgment interest.

[11] "The tort of [c]onversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 770, 905 A.2d 623 (2006). "Statutory theft under § 52-564 is synonymous with larceny under

General Statutes § 53a-119. . . . Conversion can be distinguished from statutory theft as established by § 53a-119 in two ways. First, statutory theft requires an intent to deprive another of his property; second, conversion requires the owner to be harmed by a defendant's conduct. Therefore, statutory theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion." (Internal quotation marks omitted.) Id., 771.

[12] Although the defendant contends that the court improperly refused to submit any of his special defenses to the jury, his argument on appeal concerns only his claim of waiver. We, therefore, limit our consideration of this issue to whether the court properly refused to submit his special defense of waiver to the jury.

[13] In the operative special defense of waiver, Parnoff alleged: "[Yuille] waived possession of the funds having failed to file a counterclaim or seek affirmative relief to obtain a right to the possession or continued escrow of the funds." Parnoff did not allege any facts in connection with this special defense. See *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 491, 890 A.2d 140 ("[F]acts must be pleaded as a special defense when they are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. Practice Book § 10-50" [internal quotation marks omitted]), cert. denied, 277 Conn. 928, 895 A.2d 798 (2006).

When instructing the jury, the court charged that "[Yuille] is under no obligation or was not before bringing this case, as she had a right to do, to file any counterclaim seeking to recover monies which were part of an award which had been rendered on her behalf as the result of an arbitration proceeding and on which you have received evidence in this case." Parnoff did not object to this charge.

[14] Prior to closing arguments, the court stated that "the operative pleadings are the amended complaint of February 14, 2017, the amended answer and special defenses of February 13, 2017, and of course the reply pleading remains the same."

[15] The transcript reveals the following colloquy:

"The Court: However what I indicated was the issue here involves—this lawsuit—

"[Parnoff]: Yeah.

"The Court: —involves monies that were put into an escrow account—

"[Parnoff]: Yes.

"The Court: —to which you have no claim. And involves the right to the ownership of those monies. There are three counts: conversion, statutory theft and breach of fiduciary duty. Those are the only claims that are before this jury.

"[Parnoff]: There's special defenses too, Your Honor. And there's also the question of credibility.

"The Court: There are no claims by way of special defenses, by way of counterclaim—

"[Parnoff]: No.

"The Court: —for any monies.

"[Parnoff]: No. Absolutely.

"The Court: And I have looked at some of the special defenses that you filed, and that you've attempted to file at the eleventh hour, and I think we already dealt with some of those. And I'll deal with them when they come up. If in fact there is ever any evidence in this case to support any of the special defenses, we'll deal with that."

[16] When the court asked if there were any exceptions to the charge, Parnoff did not object to the failure to charge on the special defenses. He did question the court's instruction regarding whether he had a right to recover based on the prior Appellate Court opinions. This instruction is not at issue in the present appeal. He then questioned whether it was necessary to tell the jury that it should not consider the special defenses. After the court explained that it had to do that because it had initially told the jury that there was an answer and special defenses, Parnoff responded: "I see. I see what your reasoning is."

[17] At oral argument before this court, counsel for Parnoff stated that he "[did not] believe" that Parnoff filed a request to charge on the special defenses. Prior to closing argument at the trial court, however, the court commented that Parnoff had submitted a series of requests to charge. The requests, if any, are not in the court file or in the appendices to Parnoff's brief. In any event, Parnoff never took any steps to rectify the record, to the extent he believes, contrary to counsel's representation at oral argument,

that he submitted such requests.

[18] Parnoff also refers to defendant's exhibit M, a page of a transcript from the prior proceeding, in which Yuille indicated that half of Parnoff's fee should be paid to Mooney, as support for his claim that the court improperly declined to charge the jury regarding waiver.

[19] Mooney testified that following a prior lawsuit, she had been paid and was not seeking any additional compensation by way of any legal fee in this action.

--------------------------------