******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STEPHEN W. SCHOLZ *v.* JUDA J. EPSTEIN
## (SC 20492)

Robinson, C. J., and McDonald, D'Auria,
Kahn, Ecker and Keller, Js.

*Syllabus*

The plaintiff, S, sought to recover damages from the defendant attorney for
alleged statutory (§ 52-564) theft in connection with the defendant's
conduct during prior judicial proceedings involving the foreclosure of
a municipal lien filed against S's real property. The defendant, acting
as B Co.'s attorney, commenced the prior action to foreclose the lien,
which B Co. had purchased from a municipality. During the foreclosure
action, S was defaulted for failure to appear, and the court thereafter
rendered a judgment of strict foreclosure. After the running of the law
days, and approximately six months after title vested in B Co., the
defendant filed a certificate of foreclosure in the municipal land records.
B Co. subsequently sold the property to a third party. S alleged in the
present action that the defendant, with the intent to deprive S of his
property or to appropriate the property to B Co., had perpetrated a
fraud on the trial court during the foreclosure proceedings by knowingly
making materially false representations about the state marshal's inabil-
ity to serve process on S and about the value of S's property, which
purportedly led the court to render the foreclosure judgment. The trial
court granted the defendant's motion to dismiss the present action for
lack of subject matter jurisdiction, concluding that, because all of the
defendant's alleged conduct occurred during the foreclosure proceed-
ings, S's statutory theft claim was barred by the litigation privilege,
which affords attorneys absolute immunity from liability for certain
statements made or conduct during judicial proceedings. The Appellate
Court affirmed the trial court's judgment, concluding that all of the
defendant's allegedly wrongful conduct occurred within the underlying
foreclosure proceedings and that the balancing of policy considerations
weighed in favor of applying absolute immunity to S's claim of statutory
theft. On the granting of certification, S appealed. *Held*:

1. The Appellate Court correctly determined that the litigation privilege
   afforded the defendant absolute immunity from liability for statutory
   theft, this court having concluded, after considering the underlying pur-
   pose of the judicial proceedings, the similarity between statutory theft
   and claims of defamation and fraud, and the availability of other reme-
   dies, that the policy considerations raised by the parties supported
   applying absolute immunity to S's statutory theft claim:

   a. S's statutory theft claim did not challenge or subvert the purpose
   of the underlying foreclosure proceeding but, instead, challenged the
   defendant's role as an advocate for his client, B Co., in a judicial proceed-
   ing, which S acknowledged was properly brought in light of his failure
   to pay his property taxes, and the litigation privilege absolutely bars
   causes of action arising from attorney advocacy; moreover, it was clear
   from the elements of statutory theft, which requires a plaintiff to establish
   that the defendant stole the plaintiff's property or received and concealed
   stolen property, that S's claim of statutory theft did not challenge the
   purpose of the underlying foreclosure proceeding; furthermore, S's statu-
   tory theft claim was premised on the defendant's allegedly false or mis-
   leading communications to the court during that proceeding, and
   communication is a necessary advocacy tool that the litigation privilege
   protects, regardless of the false or malicious nature of the communi-
   cation.

   b. The fact that S's statutory theft claim was more akin to claims of
   defamation and fraud, which are protected by the litigation privilege,
   than to claims of vexatious litigation and abuse of process, which are
   not protected by the litigation privilege, militated in favor of applying
   the privilege in the present case: S's statutory theft claim, like a defama-
   tion claim, was premised on the communication of false statements, and
   S alleged that the defendant fraudulently took his property by false
   pretenses, which constitutes statutory theft under this court's case law

interpreting § 52-564; moreover, it was of no consequence that the defendant made the false statements at issue to a court rather than to S himself, as the plaintiff's statutory theft claim was nonetheless premised on false communications.

c. Certain alternatives, other than civil liability, including the filing of a grievance against the defendant or a collateral action challenging the defendant's allegedly fraudulent actions, were available to the plaintiff to address the defendant's alleged conduct; moreover, the plaintiff did not cite to any federal or state precedent holding that absolute immunity does not apply to a claim of statutory theft or a similar type of claim.

2. The plaintiff could not prevail on his claim that, even if the litigation privilege applies to claims of statutory theft, it was inapplicable in the present case to the extent that the defendant's delayed recording of the certificate of foreclosure on the land records and his role in the subsequent sale of the property purportedly occurred outside the scope of the foreclosure action: the defendant, in his capacity as B Co.'s attorney in the foreclosure proceeding, was required by statute (§ 49-16) to record the foreclosure certificate on the land records, and, thus, that act was conducted in connection with, and as a required step in, the foreclosure proceeding; moreover, with respect to the defendant's conduct in assisting B Co. with the sale of the property, although the plaintiff alleged that B Co. had ultimately sold the property to a third party, the plaintiff did not allege that the defendant was involved in the sale of the property in any way or that he otherwise committed statutory theft in relation to that sale.

Argued April 28—officially released September 29, 2021*

*Procedural History*

Action to recover damages for the defendant's alleged theft, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Bellis, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to the Appellate Court, *Alvord*, *Elgo* and *Eveleigh, Js.*, which affirmed the trial court's judgment; thereafter, the plaintiff, on the granting of certification, appealed to this court. *Affirmed*.

*Jonathan J. Klein*, for the appellant (plaintiff).

*Daniel J. Krisch*, with whom, on the brief, were *Joshua M. Auxier* and *Stephen P. Fogerty*, for the appellee (defendant).

*Opinion*

D'AURIA, J. In this certified appeal, we are asked to determine the scope of the litigation privilege, which provides absolute immunity from liability, in relation to a lawyer's conduct in a foreclosure proceeding. The plaintiff, Stephen W. Scholz, appeals from the Appellate Court's judgment affirming the trial court's dismissal of the statutory theft claim he brought against the defendant, Juda J. Epstein, for lack of subject matter jurisdiction on the ground of absolute immunity. Epstein, an attorney licensed to practice law in Connecticut, represented Benchmark Municipal Tax Services, Ltd. (Benchmark), in the underlying foreclosure proceeding. The plaintiff claims that, under the circumstances of this case, the Appellate Court incorrectly concluded that the defendant enjoyed absolute immunity from the plaintiff's claim of statutory theft, specifically, by determining that (1) public policy considerations were served by affording the defendant this immunity, and (2) all of the defendant's alleged conduct occurred within the scope of the underlying foreclosure proceeding. We disagree and affirm the judgment of the Appellate Court.

As alleged in the plaintiff's complaint, the following facts, viewed in the light most favorable to the plaintiff, and procedural history are relevant to our review of this claim. The plaintiff resides at 405 Helen Street in Bridgeport and became the owner of an adjacent lot located at 744 Stillman Street in Bridgeport (Stillman property). The plaintiff uses these two properties together to operate his business, which includes the storing, repair, and resale of industrial equipment. When the plaintiff failed to pay $1018.74 in real property taxes on the Stillman property owed to the city of Bridgeport (city), the city recorded a certificate of lien on the land records for the unpaid taxes, interest and related charges. The city subsequently sold the lien to Benchmark pursuant to an assignment recorded on the land records.

The defendant, acting as Benchmark's attorney, began a civil action against the plaintiff to foreclose the lien. The summons recited the plaintiff's address as 69 Settlers Farm Road, Monroe, CT 06468. The state marshal's return of service did not reflect that service was made on the plaintiff. Further, the return of service did not describe any effort by the state marshal to locate the plaintiff, or any attempt to effect service on him, notwithstanding that the defendant himself knew throughout the foreclosure proceeding that the plaintiff resided at 405 Helen Street.[1]

The defendant then cited in the plaintiff as a defendant in the foreclosure proceeding, representing the following to the trial court: "[1] at the time the action was commenced, he believed that . . . [the plaintiff]

had been properly served; [2] [the plaintiff] was unable to be served; [3] [the defendant] directed a state marshal to effectuate service [on the plaintiff], but [the plaintiff] was not at any of the 'possible locations'; [4] [the defendant] had done his due diligence in trying to locate [the plaintiff], but 'all possible locations' had been exhausted . . . [5] the notice most likely to come to the attention of [the plaintiff] was the publication of an order of notice of the institution of the foreclosure action in the Connecticut Post, a newspaper circulated in the Bridgeport area, once a week for two successive weeks; and [6] 'the last known address of [the plaintiff] is unknown.' " All of these claims "were materially false, and [the defendant] knew [they] were materially false when he made them" because he knew that the marshal's return of service did not reflect that any service was made on the plaintiff, that the return of service did not describe any effort made by the marshal to locate the plaintiff, the possible locations where the plaintiff could have been found, and that the plaintiff resided, and could have been properly served, at 405 Helen Street in Bridgeport. The trial court subsequently ordered notice by publication.

Approximately one month later, the defendant filed a motion to default the plaintiff for failure to appear, which was granted. As a result, the plaintiff alleges that the defendant perpetrated "a fraud [on] the court" by "knowingly making materially false representations to the court with the intent to induce and cause the court to rely on those statements to order notice by publication and, ultimately, to default [the plaintiff] for failure to appear and to [render] a judgment of strict foreclosure."

The defendant then moved for a judgment of strict foreclosure. According to the complaint, the defendant sought a judgment of strict foreclosure, rather than a foreclosure by sale, by misleading the court as to the plaintiff's equity in the Stillman property based on a flawed appraisal report, which stated that the plaintiff's equity was tens of thousands of dollars less than it truly was. The court granted the motion for a judgment of strict foreclosure.

The plaintiff alleged that, "[b]y wrongfully misleading the court into [rendering] a judgment of strict foreclosure, rather than a judgment of foreclosure by sale, [the defendant] purposefully evaded the requirement of posting a sign on the property within a few feet of the front door of [the plaintiff's] residence at 405 Helen Street . . . announcing a scheduled foreclosure auction sale, and thereby purposefully deprived [the plaintiff] of notice that a foreclosure of the property was pending, and purposefully deprived him of the opportunity to redeem the property from the foreclosure or otherwise to act to protect his ownership interest in the property."

After the running of the law days and Benchmark's taking title to the property, the defendant drafted a certificate of foreclosure but did not record the certificate of foreclosure in the Bridgeport land records until approximately six months after title had vested in Benchmark. This delay, the plaintiff alleged, resulted in the town's issuing of the real property tax bill to him, not Benchmark, depriving him of an opportunity to learn of the property's sale. Benchmark then sold the property to a third party for approximately three times the fair market price listed in the appraisal report.

As a result of this conduct, the plaintiff alleged that "[he] was unaware . . . that the tax lien foreclosure action had even been commenced, let alone that it had gone to judgment, that the law days had run, that Benchmark had taken title to the property by strict foreclosure and that Benchmark had sold the property to third parties for a windfall profit . . . ." When the plaintiff discovered that the property had been sold, he bought back the property because he operated a business on both the property at 405 Helen Street and the Stillman property and feared his business and livelihood might be destroyed by the loss of the Stillman property. Accordingly, the plaintiff alleged that the defendant "wrongfully engaged in the conduct alleged . . . with the intent to deprive [him] of his property and/or to appropriate the property to Benchmark, thereby committing [statutory] theft in violation of [General Statutes] § 52-564, and causing [him] great financial loss."

The defendant moved to dismiss the plaintiff's action for lack of subject matter jurisdiction. He argued that, because all of the alleged conduct occurred during the foreclosure proceeding, the litigation privilege shielded him from the plaintiff's statutory theft claim. The plaintiff opposed the defendant's motion, arguing that his claim of statutory theft fell outside the scope of the litigation privilege. The trial court granted the defendant's motion to dismiss.

The plaintiff appealed to the Appellate Court, which affirmed the judgment of the trial court, holding that (1) the balancing of policy considerations, as required under *Simms* v. *Seaman*, 308 Conn. 523, 543–44, 69 A.3d 880 (2013), weighed in favor of applying absolute immunity to the plaintiff's claim of statutory theft, and (2) all the alleged conduct occurred within the underlying foreclosure proceeding. *Scholz* v. *Epstein*, 198 Conn. App. 197, 231–33, 232 A.3d 1155 (2020). The plaintiff then petitioned this court for certification to appeal, which we granted, limited to the following issue: "Under the circumstances of this case, did the Appellate Court correctly conclude that the defendant attorney enjoyed absolute immunity from the plaintiff's claim of statutory theft, arising from the defendant's conduct during prior judicial proceedings?" *Scholz* v. *Epstein*, 335 Conn. 943, 237 A.3d 2 (2020).

"When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss . . . a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 626, 79 A.3d 60 (2013). We review de novo a trial court's decision on a motion to dismiss under Practice Book § 10-30 (a) (1). See, e.g., id. The parties do not dispute that absolute immunity implicates the trial court's subject matter jurisdiction. See, e.g., *Tyler* v. *Tatoian*, 164 Conn. App. 82, 87, 137 A.3d 801, cert. denied, 321 Conn. 908, 135 A.3d 710 (2016); see also *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 787, 865 A.2d 1163 (2005) (like colorable claim of sovereign immunity, to protect against threat of suit, colorable claim of absolute immunity based on participation in judicial and quasi-judicial proceedings gives rise to immediately appealable final judgment). Whether absolute immunity applies to the cause of action at issue is a question of law subject to de novo review. See, e.g., *Simms* v. *Seaman*, supra, 308 Conn. 530.

I

We begin with an overview of our case law regarding absolute immunity and, specifically, its application to attorney conduct. For more than one century, this court has held that, under the litigation privilege, "[a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." (Footnotes omitted; internal quotation marks omitted.) Id., 535. In *Simms*, this court addressed in great detail the issue of whether absolute immunity extends beyond defamation claims for an attorney's conduct during judicial proceedings. In that case, the plaintiff sued the defendant attorneys, alleging fraud and intentional infliction of emotional distress based on their conduct during a judicial proceeding. Id., 525. Specifically, the plaintiff in *Simms* claimed that the attorneys, who represented his former spouse during their divorce action, failed to disclose and intentionally concealed her true financial circumstances to obtain a substantial alimony award in her favor. Id., 526–27. Arguing that absolute immunity barred those particular tort claims, the defendants moved to strike those claims. Id., 528. The trial court agreed and granted the motion, and the Appellate Court affirmed the judgment of the trial court. Id., 528–29.

On appeal to this court, we detailed the history of the litigation privilege, explaining that "[t]hree rationales have been articulated in support of the absolute privilege." Id., 535. The most important is that the privi-

lege "protects the rights of clients who should not be imperiled by subjecting their legal advisors to the constant fear of lawsuits arising out of their conduct in the course of legal representation." (Internal quotation marks omitted.) Id. "The purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." (Internal quotation marks omitted.) Id., 539. Additionally, the privilege protects access to the courts inasmuch as "retaliatory lawsuits [that might] cause the removal of [an] adversary's counsel" would compromise the judicial process, and there exist other remedies, such as the court's contempt powers and other disciplinary proceedings, to deter attorney misconduct. Id., 535–36.

We explained in *Simms*, however, that there are limits to the application of the litigation privilege to attorney conduct and communications. Id., 540. Specifically, attorneys are not protected by absolute immunity against claims for abuse of process, vexatious litigation, or malicious prosecution. Id., 540–42. This is because "whether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests . . . ." (Citation omitted; footnote omitted; internal quotation marks omitted.) Id., 541–42.

Relevant to any determination of whether policy considerations support applying absolute immunity to any particular cause of action, this court in *Simms* identified the following factors: (1) whether the alleged conduct subverts the underlying purpose of a judicial proceeding, in a similar way to how conduct constituting abuse of process and vexatious litigation does; (2) whether the alleged conduct is similar in essential respects to defamatory statements, inasmuch as a defamation action is barred by the privilege; and (3) whether the alleged conduct may be adequately addressed by other available remedies. Id., 545, 552. To assist us in our evaluation of these factors, to the extent applicable, we have considered as persuasive whether the alleged conduct has been protected by the litigation privilege in federal courts. Id., 545–46.

Since deciding *Simms*, this court has clarified that these factors and considerations are "simply instructive," with the focus being on "the issues relevant to the competing interests in each case" in light of the "particular context" of the case.[2] (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 630–31. We are not required to rely exclusively or entirely on these factors; rather, they are useful when undertaking a careful balancing of all competing public policies implicated by the specific claim at issue and determining whether affording attorneys this com-

mon-law immunity from this common-law action is warranted.[3] After evaluating the various policy concerns raised by the parties in the present case, we conclude that the litigation privilege applies to the plaintiff's claim of statutory theft.

## II

The plaintiff claims that the Appellate Court improperly balanced competing public policy factors in concluding that absolute immunity barred his statutory theft claim. As the parties and the Appellate Court have noted, there is no appellate authority from this state regarding whether absolute immunity protects against this kind of claim,[4] and the plaintiff has alleged a unique kind of tort against the defendant, who served as opposing counsel in the underlying litigation. *Scholz* v. *Epstein*, supra, 198 Conn. App. 211–12. As a result, we must examine our case law, and the policies underpinning it, to determine whether the plaintiff's claim is more akin to claims of vexatious litigation and abuse of process, to which this court has not afforded absolute immunity, or to claims of fraud and defamation, to which this court has afforded absolute immunity. We conclude that all factors—those considered in *Simms* and those unique to this case—weigh in favor of applying the litigation privilege to bar the plaintiff's claim in the present case.

## A

The plaintiff argues that his statutory theft claim, like a claim of vexatious litigation, alleges conduct amounting to an abuse of a judicial proceeding. He claims that the defendant subverted the proper purpose of the foreclosure proceeding, abusing it and weaponizing it as a tool to steal the plaintiff's property for Benchmark. According to the plaintiff, his claim, unlike claims of fraud and defamation, does not involve the allegedly improper conduct of an attorney in the role of an advocate for a client, which is protected by absolute immunity, because theft is a crime of dishonesty, not a legitimate tool of advocacy. Theft, he argues, is the "very antithesis of candor in judicial proceedings," and, thus, there is no need to immunize the defendant to encourage participation and candor in judicial proceedings.

When determining whether a plaintiff's claim challenges the purpose of the underlying judicial proceeding, we have distinguished between claims challenging the underlying purpose of the litigation and claims challenging the attorney's role as an advocate for her or his client. See *Simms* v. *Seaman*, supra, 308 Conn. 546. "[W]e have refused to apply absolute immunity to causes of action alleging the improper use of the judicial system" but have applied immunity to claims premised on factual allegations that challenge the defendant's participation in a properly brought judicial proceeding.

*MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 629. The former involves the improper use of the courts "to accomplish a purpose for which [the courts were] not designed" and is therefore not protected by the litigation privilege. (Internal quotation marks omitted.) *Simms* v. *Seaman*, supra, 546. The latter does not involve consideration of whether the underlying purpose of the litigation was improper and, thus, is entitled to absolute immunity, even if the plaintiff alleges that the attorney's conduct constituted an improper use of the courts. Id., 546–47. That is to say, it is not enough for the plaintiff to allege that the misconduct at issue constituted an abuse of the legal system, but, rather, the cause of action itself must challenge the *purpose* of the underlying litigation. *Tyler* v. *Tatoian*, supra, 164 Conn. App. 93. Thus, the privilege absolutely bars causes of action arising from attorney advocacy. See, e.g., *MacDermid, Inc.* v. *Leonetti*, supra, 628.

For example, in *Simms*, although the plaintiff alleged that the defendants' conduct was improper—the alleged fraud done on behalf of the client for her financial benefit to his financial detriment—his fraud claim did not challenge the purpose of the underlying divorce proceeding, and, thus, we held that the plaintiff's fraud claim merely challenged the defendants' conduct while representing or advocating for a client, conduct for which they were absolutely immune. In determining whether the privilege applied in *Simms*, we did not assess whether the alleged misconduct was proper advocacy but, rather, noted that the purpose of the privilege is to provide immunity from having to defend such advocacy decisions, even if that means immunity occasionally applies to misconduct. See *Simms* v. *Seaman*, supra, 308 Conn. 539, 546–47 and n.14.

Thus, in determining whether the plaintiff's claim challenges the purpose of an underlying judicial proceeding, we look at the elements of the claim itself. See id., 542–43; see also *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 633–34. Unlike claims for vexatious litigation and abuse of process, the elements of statutory theft do not anticipate a challenge to an underlying judicial proceeding but, rather, require that the plaintiff establish that the defendant stole his property or received and concealed stolen property. See General Statutes § 52-564; see also part II B of this opinion. It is clear from the elements of the cause of action that the plaintiff's claim of statutory theft does not challenge the purpose of the underlying judicial proceeding.

The plaintiff admits that the underlying foreclosure proceeding was properly brought because he had not paid taxes on his property. Nevertheless, he argues that his claim does challenge the purpose of the underlying proceedings because he alleges that, through the alleged misconduct, the defendant hijacked the judicial proceedings for a purpose other than that for which they

were intended.[5] Not only does this argument improperly focus on the allegations rather than the cause of action, but this argument, if correct, would render this privilege meaningless. Misconduct in a properly brought judicial proceeding will presumably always affect the underlying proceeding. See *Simms* v. *Seaman*, supra, 308 Conn. 547 n.14 ("virtually all claims of misconduct during judicial proceedings, including defamation, allege some type of 'serious or corruptive' effect on the judicial process, and, therefore, any attempt to assess and compare the relative degree of harm caused by different types of misconduct is not very useful in determining whether the privilege should apply in the present case"). If we were to agree with the plaintiff that such conduct constituted an abuse of the judicial proceeding, the litigation privilege would be essentially void. Thus, unlike a vexatious litigation or abuse of process claim, the plaintiff's statutory theft claim fails to challenge the underlying purpose of the litigation.

Of course, we do not condone theft as a legitimate tool of advocacy. As we said in *Simms*, such conduct is "strongly discouraged"; id., 545; but, if such conduct were not immune from liability, "the most innocent of counsel might be unrighteously harassed with suits, and therefore it is better to make the rule of law so large that an innocent counsel shall never be troubled, although by making it so large counsel are included who have been guilty of malice and misconduct." (Internal quotation marks omitted.) Id., 533–34. As discussed in more detail subsequently in this opinion, the plaintiff's claim is premised on the defendant's allegedly false or misleading communications to the court in the underlying foreclosure proceeding. Communication is a necessary advocacy tool that the litigation privilege protects, regardless of its false or malicious nature, thereby promoting candor in judicial proceedings. See *Hopkins* v. *O'Connor*, 282 Conn. 821, 838–39, 925 A.2d 1030 (2007). Thus, the plaintiff's statutory theft claim does not challenge the purpose of an underlying judicial proceeding.

B

The plaintiff argues that our public policy weighs against applying the litigation privilege to bar his claim of statutory theft because "it involves a series of calculated acts of dishonesty [that] go far beyond, and are much more sinister than, mere defamatory statements." To distinguish his statutory theft claim from the tort of defamation, the plaintiff points out that theft involves criminal conduct and requires proof of specific intent, which, according to him, "is quantitatively and qualitatively more stringent than simply proving a malicious purpose." The plaintiff also argues that, unlike defamation, statutory theft is not premised on communication, and the Appellate Court improperly focused on the defendant's lying to the trial court rather than on the defendant's stealing from the plaintiff. Finally,

addressing the court's concern in *Simms* about increased litigation, he argues that, rather than claims of statutory theft opening the floodgates to retaliatory litigation, attorneys who *properly* serve process in a foreclosure proceeding would have nothing to fear. In fact, he argues, by affording immunity as to his statutory theft claim, we would open a different kind of floodgate by immunizing thieving attorneys. We disagree.

In considering the plaintiff's arguments, it is helpful to examine how we analyzed a similar argument in *Simms* in relation to a claim of fraud. Specifically, this court in *Simms* compared the elements of fraud to the elements of defamation[6] and vexatious litigation.[7] In doing so, we considered whether the plaintiff's fraud claim was premised on communication of a false statement, like a defamation claim; *Simms* v. *Seaman*, supra, 308 Conn. 548; whether embedded in a fraud claim is a balancing test with stringent safeguards that protect against inappropriate retaliatory litigation while incentivizing the reporting of wrongdoing, like a vexatious litigation claim; id., 549; whether the fraud claim was easy to allege but difficult to prove, like defamation claims; id.; and whether, as with defamation claims, not recognizing the litigation privilege for such an action would "open the floodgates to a wave of litigation in this state's courts challenging an attorney's representation, especially in foreclosure and marital dissolution actions in which emotions run high and there may be a strong motivation on the part of the losing party to file a retaliatory lawsuit." Id., 568. In *Simms*, after considering these issues, we came down firmly on the side of applying the litigation privilege to a fraud claim against an attorney. See id., 568–69. We conclude similarly in the present case that the plaintiff's statutory theft claim has more in common with a defamation claim than an abuse of process, vexatious litigation or malicious prosecution claim, which therefore militates in favor of applying the privilege.

The elements of a claim of statutory theft under § 52-564 provide that "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." This court has explained that "[s]tatutory theft under . . . § 52-564 is synonymous with larceny [as defined in] General Statutes § 53a-119 . . . ." (Citation omitted; internal quotation marks omitted.) *Stuart* v. *Stuart*, 297 Conn. 26, 41, 996 A.2d 259 (2010). The definition of larceny under § 53a-119 includes various fraudulent methods of taking property from its owner, including when a person obtains property by false pretenses.[8]

Contrary to the plaintiff's assertion, his statutory theft claim, like a defamation claim, is premised on the communication of false statements. Although § 52-564 does not specifically mention communications, we must consider not only the elements of the cause of action but

also whether the complaint contains "allegations that a party suffered harm because of a falsehood communicated by the opponent's attorney . . . ." *Simms* v. *Seaman*, supra, 308 Conn. 548; see also *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 727, 161 A.3d 630 (2017). The allegations in the plaintiff's complaint make clear that he is claiming that the defendant stole his property by making various false communications and misrepresentations to the trial court. In other words, the plaintiff's complaint plainly alleges that the defendant fraudulently took his property by false pretenses, which constitutes statutory theft under our case law interpreting § 52-564. See, e.g., *Stuart* v. *Stuart*, supra, 297 Conn. 41 and n.10.

This court consistently has held that communications are afforded immunity if they are "uttered or published in the course of judicial proceedings" and are "in some way pertinent to the subject of the controversy."[9] (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, supra, 282 Conn. 830–31. For example, "[t]he privilege extends to pleadings and other papers made a part of a judicial or quasi-judicial proceeding"; (internal quotation marks omitted) id., 833; as long as the statements are sufficiently relevant to the issues involved in a proposed or ongoing judicial proceeding, with the test for relevancy described as "generous . . . ." Id., 839. This is true even if the communication is false or malicious. Id., 838–39. In light of the elements of statutory theft and the specific claim of statutory theft raised in the present case, we conclude that the plaintiff's claim of statutory theft is more analogous to a claim of fraud or defamation, as opposed to a claim of vexatious litigation or abuse of process, because it is premised on the communication of false or misleading statements.

The plaintiff maintains, to the contrary, that his claim is not premised on the communication of false or misleading statements. Rather, he argues that it is the defendant's conduct in relation to him, not the defendant's conduct in relation to the trial court, that is pertinent, and he does not allege that the defendant made any false communications to him. It is true that theft does not necessarily involve false communications and that the only conduct alleged to have been taken against the plaintiff by the defendant is the theft. None of the alleged false communications and misrepresentations was made directly to the plaintiff.

But, as discussed, the specific theft the plaintiff alleged here is premised on these false communications and misrepresentations because the defendant allegedly perpetrated the theft by means of the communications. The plaintiff's complaint clearly concludes that the defendant's alleged false communications and misrepresentations to the trial court resulted in the defendant's stealing his property. Without these allegations, the plaintiff's complaint would consist of only the legal

conclusion that theft occurred, without describing how it occurred. Thus, the fact that the defendant made these false statements to the trial court, not to the plaintiff, does not affect our analysis, because the statutory theft claim is premised on these communications.

The plaintiff's statutory theft claim also is distinguishable from a vexatious litigation claim because the elements of the claim do not provide any safeguards to prevent inappropriate retaliatory litigation. See footnote 2 of this opinion. Unlike a claim of vexatious litigation,[10] a claim of statutory theft does not provide the same level of protection against the chilling effects of a potential lawsuit. For example, the elements of statutory theft contain nothing similar to the requirement that the underlying proceeding terminated in the plaintiff's favor; nor is there a requirement that the court decide that the defendant lacked probable cause to bring the proceeding. Rather, as with a claim of fraud, "the mere possibility" of a claim of statutory theft premised on obtaining property by false pretenses "could expose attorneys to harassing and expensive litigation, [and] would be likely to inhibit their freedom in making good faith evidentiary decisions and representations and, therefore, [could] negatively affect their ability to act as zealous advocates for their clients." (Footnote omitted.) *Simms* v. *Seaman*, supra, 308 Conn. 551.

The plaintiff responds that a claim of statutory theft does in fact contain stringent requirements that balance competing policy considerations because it requires proof of specific intent. Contrary to the plaintiff's assertion, however, this intent element does not make the plaintiff's claim distinguishable and unique, as this court has applied absolute immunity to other torts that have specific intent elements, such as fraud and tortious interference.[11] See id., 548; *Rioux* v. *Barry*, 283 Conn. 338, 351, 927 A.2d 304 (2007). Additionally, the fact that specific intent is difficult to prove makes a claim of statutory theft similar to claims of defamation and fraud—it is easy to allege but difficult to prove. A disgruntled litigant could easily bring a claim for statutory theft to falsely allege that an attorney's improper conduct affected the outcome of the litigation and, thus, led to property changing hands—either because of a judgment of foreclosure or an award for damages. Thus, a statutory theft claim does not have built-in safeguards in place similar to those built into a claim of vexatious litigation.

The plaintiff maintains that his statutory theft claim is different from a defamation or fraud claim in that "it involves a series of calculated acts of dishonesty . . . ." All of these claims, however, are premised on false communications. This court has held that absolute immunity applies even if communications are false or malicious. See *Simms* v. *Seaman*, supra, 308 Conn. 539–40. We have never suggested that the degree of

dishonesty is a relevant factor. Moreover, the alleged dishonesty in this case is similar to that alleged in *Simms*. In both cases, the plaintiffs alleged that the defendants made knowingly false representations to the trial court to the plaintiffs' financial detriment. See id., 526–27. In *Simms*, the trial court granted the defendant a substantial alimony award; see id., 526; and, in the present case, the plaintiff had to buy back his property. See *Perugini* v. *Giuliano*, 148 Conn. App. 861, 872–75, 89 A.3d 358 (2014) (holding that absolute immunity barred claim of negligent infliction of emotional distress, even though alleged misconduct by defendant attorney was for purpose of personal financial gain, because claim did not challenge purpose of underlying proceeding and was premised on communications within judicial proceeding); *Stone* v. *Pattis*, 144 Conn. App. 79, 96, 99, 72 A.3d 1138 (2013) (holding that absolute immunity applied to defendant attorneys' conduct, even though alleged conduct involved deception, unfairness, and negligence).[12]

Accordingly, we hold that the plaintiff's statutory theft claim is more akin to claims of defamation and fraud than to claims of vexatious litigation and abuse of process.

## C

We now turn to the final factor in determining whether the alleged conduct may be addressed by other available remedies. In *Simms*, we found it significant that there were safeguards in place, other than civil liability, to deter or prevent attorney misconduct or to provide relief from that misconduct. *Simms* v. *Seaman*, supra, 308 Conn. 552.[13] The plaintiff argues that these remedies either were not available to him or are not adequate remedies in the present case because they cannot sufficiently compensate him for the defendant's improper conduct.

For example, although he recognizes that he could have brought a collateral proceeding to challenge the defendant's allegedly fraudulent actions,[14] the plaintiff argues that this remedy would not have been swift enough for him to regain his property and to continue his business in a timely fashion. See *Merry-Go-Round Enterprises, Inc.* v. *Molnar*, 10 Conn. App. 160, 162 n.1, 521 A.2d 1065 (1987); see also *Hoey* v. *Investors' Mortgage & Guaranty Co.*, 118 Conn. 226, 230–31, 171 A. 438 (1934). That the plaintiff determined, for whatever reason, to forgo this option does not render this remedy insufficient.

The plaintiff also argues that a grievance proceeding is an insufficient remedy because an attorney reprimand, suspension or disbarment would not make him whole. He recognizes that he may seek restitution in a grievance proceeding; see Practice Book § 2-37 (a) (2); but dismisses this remedy as rare. Moreover, he argues

that he attempted to use this remedy but that his grievance proceeding was dismissed and, thus, was an insufficient remedy. Because these other remedies are inadequate, according to the plaintiff, applying immunity to statutory theft claims would open the floodgates to thieving attorneys.[15]

Although, as discussed in part II A of this opinion, we in no way condone the conduct that the plaintiff has alleged and must assume it is true, we do not agree that these other remedies—remedies that both protect against such attorney misconduct and compensate individuals harmed—are not adequate. Nor are we persuaded that the unavailability of the preferred remedy— a statutory theft claim—will provide attorneys with a "license to steal . . . ." The fact that restitution in a grievance proceeding may be rare does not mean that this remedy is inadequate to compensate the plaintiff, especially if the defendant's conduct was in fact as egregious as alleged. Contrary to the plaintiff's contention, the dismissal of his grievance proceeding against the defendant does not render this remedy inadequate; rather, it throws cold water on his allegations and supports our concern that these kinds of claims may easily be raised in retaliation by disgruntled litigants.

### D

Not only are there no appellate level cases on whether the litigation privilege applies to claims of statutory civil theft in Connecticut, but the parties have provided minimal case law from other jurisdictions. The plaintiff has not presented any precedent—federal or state—on this issue. The defendant has cited only a single federal case on this issue, *Marin* v. *McClincy*, 15 F. Supp. 3d 602, 615 (W.D. Pa. 2014) (dismissing conversion claim based on filing of documents in connection with lawsuit), and a handful of cases from sister state courts. See *Finton Construction, Inc.* v. *Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 212–13, 190 Cal. Rptr. 3d 1 (2015) (upholding dismissal of action against attorneys for conversion and receipt of stolen property); *Haliburda* v. *Denholtz*, Docket No. E030792, 2002 WL 1898171, *2 (Cal. App. August 19, 2002) (litigation privilege barred abuse of process action despite plaintiff's dishonest conduct in levying bank account); *Highland Capital Management, LP* v. *Looper Reed & McGraw, P.C.*, Docket No. 05-15-00055-CV, 2016 WL 164528, *1 (Tex. App. January 14, 2016) (affirming order granting summary judgment based on absolute immunity in theft and conspiracy action against opponent's law firm), review denied, Docket No. 16-0140 (Tex. June 17, 2016). In all of these jurisdictions, the elements of statutory theft and conversion are the same as in Connecticut. See, e.g., Cal. Penal Code § 496 (a) and (c) (Deering Supp. 2021) (permitting civil suits for treble damages against "[a] principal in the actual theft of the property"); see also *McDonald* v. *Wells Fargo Bank, N.A.*,

374 F. Supp. 3d 462, 493 (W.D. Pa. 2019); *Beardmore* v. *Jacobsen*, 131 F. Supp. 3d 656, 669 (S.D. Tex. 2015); *Finton Construction, Inc.* v. *Bidna & Keys, APLC*, supra, 213; *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 771, 905 A.2d 623 (2006); *Yuille* v. *Parnoff*, 189 Conn. App. 124, 137 n.11, 206 A.3d 766, cert. denied, 332 Conn. 902, 208 A.3d 659 (2019).

Although some of these cases may be distinguishable from the present case in that they involved conversion and not statutory civil theft or did not involve theft by an attorney, none of them supports the opposite conclusion. To the contrary, the plaintiff has not cited, and this court has not discovered, any federal or state court decision holding that absolute immunity does *not* apply to a claim of statutory theft or a similar type of claim. Accordingly, considering all of the public policy concerns raised by the parties—including those raised in *Simms* and others unique to the present case—we conclude that the Appellate Court correctly determined that the litigation privilege applies to bar the plaintiff's statutory theft claim.

### III

Finally, the plaintiff argues that, even if the litigation privilege applies to claims of statutory theft, the privilege does not apply in the present case to the extent his claim is premised on the defendant's delayed recording of the certificate of foreclosure on the land records and his role in the subsequent sale of the property, because this conduct occurred outside the scope of the foreclosure action. The plaintiff argues that, once title vested in Benchmark after the running of the law days, the foreclosure proceeding reached its final disposition, and anything that occurred afterward was not part of the foreclosure proceeding. The defendant disagrees that the conduct alleged was not sufficiently related to the underlying foreclosure proceeding for the privilege to apply.[16]

As explained in part II B of this opinion, it is well established that "communications uttered or published in the course of judicial proceedings are [protected by the litigation privilege] so long as they are in some way pertinent to the subject of the controversy." (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, supra, 282 Conn. 832. The plaintiff does not dispute that the underlying foreclosure proceeding was a judicial proceeding. Nor does he dispute that recording the certificate of foreclosure on the land records and the subsequent sale of the property were relevant to the foreclosure proceeding. The only dispute is whether these two actions took place within the scope of the "judicial proceeding," as that term is understood in our case law regarding absolute immunity.

Consistent with our generous test for relevancy on this score, this court has explained that the phrase

"judicial proceeding" has been defined "liberally to encompass much more than civil litigation or criminal trials." *Hopkins* v. *O'Connor*, supra, 282 Conn. 839. The privilege clearly applies "to every step of the proceeding until [its] final disposition"; id., 826; including "to statements made in pleadings or other documents prepared in connection with a court proceeding." *Petyan* v. *Ellis*, 200 Conn. 243, 252, 510 A.2d 1337 (1986). Additionally, this court has extended the litigation privilege to "those preparatory communications that may be directed to the goal of the proceeding." *Hopkins* v. *O'Connor*, supra, 832; see id., 837 (applying litigation privilege to defamation claim premised on police officer's statements pursuant to General Statutes § 17a-503 (a) that resulted in plaintiff's being detained in psychiatric hospital for evaluation because statements that plaintiff had psychiatric disabilities and was dangerous were clearly made pursuant to § 17a-503 as "the first step in the 'distinct possibility' of a judicial proceeding"). Similarly, our Appellate Court has held that "discussion in the hallway, as part of a postverdict settlement conference, was a step in the ongoing judicial proceeding." *Kenneson* v. *Eggert*, 196 Conn. App. 773, 783, 230 A.3d 795 (2020). We disagree with the plaintiff that recording the certificate of foreclosure and assisting Benchmark in conducting the judicial sale of the property to a third party occurred outside the scope of the foreclosure proceeding.

The plaintiff argues that recording the certificate of foreclosure occurred after title vested and after the running of the law days, and, therefore, this occurred after the final disposition of the foreclosure proceeding. We agree with the Appellate Court that, because the defendant recorded the certificate of foreclosure in the land records "in his capacity as Benchmark's attorney in the foreclosure proceeding, pursuant to the requirements of [General Statutes] § 49-16, that action was clearly conducted in connection with, and was related and relevant to, the foreclosure proceeding." (Footnote omitted.) *Scholz* v. *Epstein*, supra, 198 Conn. App. 230. Section 49-16 requires in relevant part that, "[w]hen any mortgage of real estate has been foreclosed, and the time limited for redemption has passed, and the title to the mortgaged premises has become absolute in the mortgagee, or any person claiming under him, he shall, either in person *or by his agent or attorney*, forthwith make and sign a certificate describing the premises foreclosed, the deed of mortgage on which the foreclosure was had, the book and page where the same was recorded and the time when the mortgage title became absolute. The certificate shall be recorded in the records of the town where the premises are situated . . . ." (Emphasis added.) Under the clear language of § 49-16, recording the certificate of foreclosure in the land records is a statutory requirement in a foreclosure proceeding and, thus, is conducted in connection with

and as a required step in the foreclosure proceeding.

As for the defendant's conduct in assisting Benchmark with the sale of the property to a third party, the plaintiff argues that Benchmark was not required to sell the property and could have held title to it permanently and, therefore, that this conduct was an entirely unnecessary postproceeding action. The plaintiff's argument, however, does not fully address the Appellate Court's rationale. The Appellate Court held that, because the plaintiff's complaint did not contain any allegations of improper conduct by the defendant in relation to this sale, the plaintiff's argument lacked merit. *Scholz* v. *Epstein*, supra, 198 Conn. 230–31. Alternatively, the Appellate Court held that, even if the allegations in the complaint were sufficient to raise this claim, the sale of the foreclosed property was an integral step in the foreclosure proceeding. Id., 231.

We agree with the Appellate Court that the plaintiff's argument lacks merit because his complaint does not allege that the defendant committed statutory theft based on his actions in relation to the sale of the property to a third party. Not only does the complaint not allege that the defendant committed any misconduct in relation to this sale, but it is void of any allegation that the defendant was involved in the sale in any way. The complaint alleges only that *Benchmark* sold the property to a third party. Thus, because the plaintiff never alleged that his claim of statutory theft was premised on the defendant's misconduct in relation to the sale of the property, the plaintiff's argument fails, and we need not determine whether such misconduct would fall within the scope of the foreclosure proceedings.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* September 29, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The plaintiff alleges that the defendant's knowledge of the plaintiff's residence was based on the following facts: (1) a tax bill for the property that was issued by the city and included the plaintiff's correct address, which was a matter of public record; (2) a demand letter written by the defendant to the plaintiff, addressed to the plaintiff at 405 Helen Street in Bridgeport; (3) a letter written by the defendant to the plaintiff rejecting a payment the plaintiff tendered, which also was addressed to the plaintiff at 405 Helen Street in Bridgeport; (4) a marshal's return of service from a previous tax lien foreclosure action brought against the plaintiff by the defendant on behalf of Benchmark regarding real property taxes that were due on the property at 405 Helen Street, which stated that service was made on the plaintiff at his usual place of abode, 405 Helen Street in Bridgeport; and (5) evidence showing that the defendant had served the plaintiff with other documents at that address as well.

[2] For example, in *MacDermid*, *Inc.* v. *Leonetti*, supra, 310 Conn. 630–31, this court held that absolute immunity did not bar a claim of employer retaliation. In *MacDermid*, *Inc.*, the plaintiff employer had filed an action for civil theft, fraud, unjust enrichment, and conversion, premised on the defendant employee's conduct in relation to his workers' compensation claim. Id., 622. The defendant counterclaimed, alleging that the plaintiff violated General Statutes § 31-290a by initiating the underlying action solely in retaliation for his exercise of his rights under the Workers' Compensation Act (act), General Statutes § 31-275 et seq. Id. The plaintiff moved to dismiss the counterclaim, arguing that the court lacked subject matter jurisdiction

over that claim because the act of filing an action is protected by the doctrine of absolute immunity. Id. In holding that the litigation privilege did not apply to a claim alleging a violation of § 31-290a, we noted that the cause of action did not include the same stringent requirements and balancing of interests as a claim of vexatious litigation. Id., 632–33. Nevertheless, we determined that the policy underlying § 31-290a was similar to the policy vindicated by a vexatious litigation claim. Id., 631, 635. Just as vexatious litigation prohibits an individual from using the litigation process for an illegitimate purpose, § 31-290a prohibits an employer from initiating an action against an employee for the illegitimate purpose of retaliating against the employee for the employee's exercise of his or her rights under the act. Id. Additionally, we relied heavily on the fact that, not only would barring immunity not open the floodgates to retaliatory claims against employers, but providing immunity actually would deter employees from exercising their rights under the act. Id., 635–36; see also id., 625 n.7.

[3] Justice Palmer dissented in *Simms*, disagreeing with the standard the majority had established. See *Simms* v. *Seaman*, supra, 308 Conn. 584 (*Palmer, J.*, dissenting). He argued that claims alleging fraud by attorneys "should be permitted if the plaintiff first seeks relief in the underlying proceeding or files a grievance complaint against the offending attorney and, in connection therewith, secures either a sanction against the attorney or a finding of attorney misconduct. This limited immunity is sufficient to protect attorneys against the threat of frivolous, retaliatory litigation, on the one hand, and provides a fair opportunity for recovery by a party who has been defrauded by opposing counsel, on the other." Id. In the present case, the plaintiff did not seek sanctions in the underlying proceeding, and the grievance he filed against the defendant did not secure a finding of attorney misconduct; rather, it was dismissed. Thus, even under Justice Palmer's standard, the plaintiff's statutory theft claim, which is akin to a claim of fraud, would not be permitted.

[4] The Appellate Court noted: "Although there is no appellate authority on this issue, a number of Superior Court cases have concluded that absolute immunity is a bar to a claim against an attorney for statutory theft." *Scholz* v. *Epstein*, supra, 198 Conn. App. 211–12 n.2; see id., citing *Vossbrinck* v. *Cheverko*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-17-5016825-S (February 20, 2018), *Gordon* v. *Eckert Seamans Cherin & Mellott, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-17-5038333-S (February 6, 2018) (65 Conn. L. Rptr. 893, 899–901), and *Stradinger* v. *Griffin Hospital*, Superior Court, judicial district of Waterbury, Docket No. CV-15-6026406-S (December 11, 2015).

[5] Further, to the extent the plaintiff is arguing that he alleged in his complaint that the defendant improperly used the courts, in that the defendant's conduct in the underlying litigation constituted an abuse of process, such an allegation is not sufficient to bar the litigation privilege, but, rather, the plaintiff was required to, but did not, set forth sufficient allegations to establish a cause of action for abuse of process. See *Mozzochi* v. *Beck*, 204 Conn. 490, 494–98, 529 A.2d 171 (1987); see also *Perugini* v. *Giuliano*, 148 Conn. App. 861, 874, 89 A.3d 358 (2014) (noting that plaintiff may have been able to, but did not, assert abuse of process claim).

[6] "To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Internal quotation marks omitted.) *Simms* v. *Seaman*, supra, 308 Conn. 547–48.

[7] "Vexatious litigation requires a plaintiff to establish that: (1) the previous lawsuit or action was initiated or procured by the defendant against the plaintiff; (2) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice; (3) the defendant acted without probable cause; and (4) the proceeding terminated in the plaintiff's favor." *Rioux* v. *Barry*, 283 Conn. 338, 347, 927 A.2d 304 (2007).

[8] General Statutes § 53a-119 provides in relevant part that "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . . (2) Obtaining property by false pretenses. A person obtains property by false pretenses when, by any false token, pretense or device, he obtains from another any property, with intent to defraud him or any other person. . . ."

[9] The plaintiff's claim that not all of the alleged conduct occurred in the

course of the foreclosure proceeding is addressed in part III of this opinion.

[10] We note that a lack of stringent policy balancing safeguards is not detrimental to a plaintiff's claim that the litigation privilege does not apply. See footnote 2 of this opinion. For example, claims of abuse of process and employer retaliation under General Statutes § 31-290a do not have these safeguards, but this court has barred the application of the litigation privilege because of other policy considerations. See *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 633 ("the elements of abuse of process, a tort [that] also falls outside the scope of absolute immunity, are less stringent than the elements of vexatious litigation"). The plaintiff's statutory theft claim is distinguishable from claims of abuse of process and employer retaliation, however, because the plaintiff has not set forth any policy considerations that weigh in favor of barring the litigation privilege.

[11] The plaintiff, however, argues that a claim of statutory theft is unique in that it is criminal in nature. Although theft may serve as a ground for criminal charges, the claim at issue is civil in nature. Moreover, this court also has applied absolute immunity to other torts that have criminal counterparts, such as fraud. See *Simms* v. *Seaman*, supra, 308 Conn. 568–69; see also General Statutes § 53a-119 (larceny defined to include various kinds of fraudulent activity); General Statutes § 53a-125c (telephone fraud); General Statutes § 53a-215 (insurance fraud); General Statutes § 53a-291 (vendor fraud).

[12] The plaintiff argues that the present case is more analogous to *Fiondella* v. *Meriden*, 186 Conn. App. 552, 200 A.3d 196 (2018), cert. denied, 330 Conn. 961, 199 A.3d 20 (2019), than to *Simms* because both cases involve the intentional concealment of the underlying proceeding. See id., 555. We disagree. In *Fiondella*, the defendants successfully brought an action seeking a declaratory judgment that they were the legal owners of a portion of land by operation of the doctrine of adverse possession. Id. The plaintiffs in *Fiondella*, who were not parties in the underlying declaratory judgment action, subsequently brought claims of fraud, slander of title, and civil conspiracy against the defendants, alleging that the defendants had intentionally concealed the declaratory judgment action from them, contrary to their property rights and interests. Id., 555, 559–60. The Appellate Court held that absolute immunity did not apply to bar the plaintiffs' claims because the plaintiffs were not parties to or involved in the underlying declaratory judgment action; the claims were solely premised on conduct, not communications; and the alleged fraud did not occur during the pendency of a judicial proceeding between these parties. Id., 562–63. The present case clearly involves dishonest communications of a party opponent in an underlying case in which the plaintiff was a party.

[13] For example, in *Simms*, a case involving an award of alimony, we indicated that a "dissatisfied litigant may file a motion to open the judgment" or otherwise ask the court for relief from the award affected by an attorney's misconduct. *Simms* v. *Seaman*, supra, 308 Conn. 552. Further, the plaintiff in *Simms* could file "a grievance against the offending attorney under the Rules of Professional Conduct" or ask the trial court to exercise its inherent authority to impose sanctions in connection with an attorney's fraudulent conduct. Id.

[14] The plaintiff also argued at oral argument before this court that he was not able to bring a motion to open on the ground of fraud. In a recent case, although it involved different facts, this court held that a plaintiff may move to open a judgment of strict foreclosure on the basis of fraud after the passing of the law days under General Statutes § 49-15. See *U.S. Bank National Assn.* v. *Rothermel*, 339 Conn. 366, 379 and n.11, 260 A.3d 1187 (2021) ("courts may, in rare and exceptional cases, exercise a limited form of continuing jurisdiction over motions to open judgments of strict foreclosure after the passage of the law days, notwithstanding the statutory limitation imposed by § 49-15," and the motion to open must set forth "particularized factual allegations that could support a claim cognizable in equity," including a claim of fraud, accident, mistake, or surprise).

[15] The plaintiff also argues that he has inadequate alternative remedies because he could not bring an abuse of process claim given that the underlying foreclosure proceeding was properly brought. We note that whether the plaintiff could have brought an abuse of process claim against the defendant in the present case is an open question in Connecticut, as this court has not yet addressed the issue of "the scope of the term process" as that relates to an action for abuse of process. *Larobina* v. *McDonald*, 274 Conn. 394, 408, 876 A.2d 522 (2005). We need not decide this issue, however, given the other remedies available to the plaintiff to both punish the alleged conduct

and to cure any resulting harm.

[16] The defendant also argues that this claim is not within the scope of the certified issue. The defendant is correct that the claims presented to this court are limited to those for which certification was granted and that, if this court declined to certify a particular issue, then that issue is not properly before this court. See, e.g., *In re Natalie S.*, 325 Conn. 833, 847 n.5, 160 A.3d 1056 (2017). As the certified issue in the present case is phrased, we believe it reasonably includes the plaintiff's claim that the Appellate Court improperly held that the defendant's conduct of untimely recording the certificate of foreclosure and assisting in the sale of the property to a third party occurred during the course of the foreclosure proceeding. See *Scholz* v. *Epstein*, supra, 335 Conn. 943. Moreover, to the extent there was any uncertainty in this regard, addressing this claim inflicts no unfairness on the defendant, who had the opportunity to fully brief this issue, both in this court and in the Appellate Court.

------------------------------