******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# AMMAR I. *v.* DEPARTMENT OF
# CHILDREN AND FAMILIES*
## (SC 20906)

Mullins, C. J., and McDonald, D'Auria, Ecker and Dannehy, Js.

*Syllabus*

The plaintiff sought, inter alia, damages from the defendant, the Department of Children and Families, alleging that it had discriminated against him on the basis of his religion in violation of statute (§§ 46a-58 (a) and 46a-71 (a)) during the course of prior child protection proceedings in which his parental rights were ultimately terminated. The trial court granted in part the defendant's motion to dismiss, dismissing the majority of the plaintiff's allegations of discrimination on the ground that they were time barred pursuant to statute ((Rev. to 2019) § 46a-82 (f)). The court declined, however, to dismiss certain other timely allegations, namely, those relating to the defendant's alleged discrimination during the termination of parental rights trial. Thereafter, the court denied the defendant's motion to reargue, rejecting the defendant's argument, raised for the first time in that motion, that the litigation privilege barred the remaining, timely allegations that the trial court declined to dismiss. Subsequently, the defendant filed an interlocutory appeal with the Appellate Court, challenging the trial court's denial of the motion to reargue and the court's determination that the litigation privilege did not bar the remaining, timely allegations. The Appellate Court concluded that the trial court had incorrectly determined that the litigation privilege did not bar the remaining, timely allegations and remanded the case, ordering the trial court to dismiss the plaintiff's complaint in its entirety. In response to the Appellate Court's remand order and prior to the plaintiff's filing of a petition for certification to appeal to this court, the trial court rendered judgment dismissing the plaintiff's complaint in its entirety. Thereafter, the plaintiff, on the granting of certification, appealed from the Appellate Court's judgment to this court. The plaintiff and the intervenor, the Commission on Human Rights and Opportunities, claimed, inter alia, that the Appellate Court had incorrectly determined that the remaining, timely allegations were barred by the litigation privilege. *Held*:

The Appellate Court correctly concluded that the litigation privilege barred the plaintiff's timely allegations pertaining to the defendant's alleged discrimination during the termination of parental rights trial.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

The plaintiff's discrimination claim was akin to one of defamation, to which the litigation privilege applies, and was not akin to a vexatious litigation claim, which challenges the purpose for which an underlying action was commenced, insofar as the remaining, timely allegations pertained exclusively to the words and conduct of the defendant's agents during the termination of parental rights trial and did not challenge the origin of the termination proceedings, and there were other available remedies to adequately address the defendant's conduct.

The defendant, as a governmental entity, was entitled to invoke the litigation privilege in connection with its in-court conduct, and this court declined the intervenor's invitation to adopt a new rule precluding all nonpersons from invoking the litigation privilege.

Insofar as the Appellate Court's order on remand that the trial court dismiss the plaintiff's complaint in its entirety and the trial court's execution of that order prior to this appeal had hindered the plaintiff's ability to seek appellate review of the trial court's dismissal of the majority of his allegations as untimely, this court reversed in part the judgment of the Appellate Court and directed the Appellate Court on remand to vacate the trial court's prior judgment of dismissal and to remand the case to the trial court with direction to render a new judgment of dismissal, from which the plaintiff could appeal and challenge the trial court's granting of the defendant's motion to dismiss with respect to those allegations that the trial court had deemed untimely.

Argued October 31, 2024—officially released April 1, 2025

*Procedural History*

Action to recover damages for the defendant's alleged discrimination, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Morgan, J.*, granted in part the defendant's motion to dismiss; thereafter, the defendant appealed to the Appellate Court, which granted the motion to intervene filed by the Commission on Human Rights and Opportunities; subsequently, the Appellate Court, *Moll*, *Clark* and *Lavine, Js.*, reversed the trial court's judgment and remanded the case with direction to grant the defendant's motion to dismiss; thereafter, the plaintiff, on the granting of certification, appealed to this court. *Reversed in part*; *judgment directed*.

*Ammar I.*, self-represented, the appellant (plaintiff).

*Michael K. Skold*, deputy solicitor general, with whom, on the brief, was *William Tong*, attorney general, for the appellant (defendant).

*Michael E. Roberts*, former human rights attorney, for the appellee (intervenor Commission on Human Rights and Opportunities).

*Opinion*

D'AURIA, J. The sole issue in this certified appeal is whether the litigation privilege affords absolute immunity to the defendant, the Department of Children and Families, from a claim by the self-represented plaintiff, Ammar I., that the defendant had discriminated against him based on his religion during his termination of parental rights trial. The plaintiff asserts that the Appellate Court incorrectly concluded that the litigation privilege barred his discrimination claim challenging the defendant's improper use of child protection proceedings to alienate him from his children. We conclude that the Appellate Court correctly held that the litigation privilege barred the plaintiff's remaining timely allegations pertaining exclusively to the defendant's actions during his termination of parental rights trial. We nevertheless reverse in part the Appellate Court's judgment to the extent that the court's remand order directed the trial court to grant the defendant's motion to dismiss in its entirety. We therefore affirm in part and reverse in part the Appellate Court's judgment.

Relevant to this appeal are the allegations of the plaintiff's complaint, which we accept as true at this stage of the proceedings, as well as the following undisputed facts and procedural history. Between 2015 and 2020, the defendant, the plaintiff, and the plaintiff's wife, were engaged in a highly contested child protection case with respect to the plaintiff and his wife's three children. See *In re Omar I.*, 197 Conn. App. 499, 506–11, 231 A.3d 1196, cert. denied, 335 Conn. 924, 233 A.3d

1091, cert. denied, U.S. , 141 S. Ct. 956, 208 L. Ed. 2d 494 (2020). In 2015, a series of incidents involving the police caused the plaintiff to move for temporary ex parte custody of the children in a separate divorce action with his wife. Id., 507–508, 513. After a hearing, the trial court committed the children to the custody and care of the Commissioner of Children and Families (commissioner). Id., 508. In 2015, the commissioner placed the children with a foster family and filed neglect petitions with respect to the children. Id., 510. In 2017, the court adjudicated the children neglected, and the defendant made efforts to reunify the children with the plaintiff and his wife. Id., 504. In 2018, attorneys representing the children filed petitions to terminate the parental rights of both the plaintiff and his wife. Id., 505–506. Although the commissioner initially advocated for the plaintiff's wife to be the sole custodial parent, by the time of the termination trial, the commissioner had changed her position and supported the children's requests for termination of the parental rights of the plaintiff and his wife. Id., 506. The trial took place over the course of fifteen days between January and April, 2019. Id. In July, 2019, the court rendered judgments terminating the parental rights of the plaintiff and his wife and denied their motions to revoke the orders that committed the children to the commissioner's care and custody. See id. The Appellate Court affirmed these judgments in an opinion spanning nearly 100 pages; see id., 597; and this court denied the plaintiff's petition for certification to appeal. *In re Omar I.*, 335 Conn. 924, 233 A.3d 1091 (2020).

On July 11, 2019, the plaintiff filed a one count complaint against the defendant with the Commission on Human Rights and Opportunities (commission), alleging that the defendant had subjected him to a continuous course of religious discrimination during the child protection case. The commission issued a release of

jurisdiction pursuant to General Statutes § 46a-83a. The plaintiff thereafter began the present action in the Superior Court.

In his complaint, the plaintiff claimed that the defendant had discriminated against him solely because he is Muslim, in violation of General Statutes §§ 46a-58 (a) and 46a-71 (a),[1] and that these acts of discrimination denied him his constitutional right to the integrity of his family and the right to raise his children. He based his claim on a series of actions the defendant had undertaken during the child protection action, including the defendant's 2015 filing of neglect petitions, the defendant's 2015 placement of the children with a practicing Christian couple instead of a Muslim family, the trial court's 2017 orders adjudicating the children neglected, the defendant's 2017 and 2018 permanency plans seeking to reunify the children with the plaintiff's wife, and the defendant's conduct during the 2019 termination of parental rights trial. He sought damages and any other relief the court deemed just and proper.

The defendant moved to dismiss the entirety of the plaintiff's complaint on several grounds, including impermissible collateral attack, res judicata, collateral estoppel, prior pending action, sovereign immunity, lack of

---

[1] General Statutes § 46a-58 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the Constitution or laws of this state or of the United States, on account of religion  . . . ."

Although § 46a-58 (a) was amended by No. 23-145, § 1, of the 2023 Public Acts and No. 22-82, § 11, of the 2022 Public Acts, those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

General Statutes § 46a-71 (a) provides in relevant part: "All services of every state agency shall be performed without discrimination based upon  . . . religious creed  . . . ."

Although § 46a-71 (a) was amended by No. 22-82, § 17, of the 2022 Public Acts, that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

standing, failure to exhaust administrative remedies, failure to comply with statutory requirements, and as time barred pursuant to General Statutes (Rev. to 2019) § 46a-82 (f). The trial court granted in part and denied in part the defendant's motion to dismiss.

Specifically, the court ruled that the "vast majority" of the allegedly discriminatory conduct was time barred by § 46a-82 (f) because it occurred prior to January 12, 2019, which was more than 180 days before the plaintiff filed his July, 2019 complaint with the commission. The court rejected the plaintiff's reliance on the continuing violation doctrine, holding that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," and that the plaintiff failed to allege that the defendant had "engaged in a specific discriminatory policy or mechanism . . . ." The court accordingly dismissed the vast majority of the plaintiff's discrimination claim to the extent that it was supported by "discrete acts [that] occurred prior to January 12, 2019," and denied the remainder of the defendant's motion to dismiss on the several other grounds the defendant had raised, but the court did not specifically articulate which allegations survived the motion to dismiss as timely. The plaintiff appealed from this decision, but the Appellate Court dismissed that appeal for lack of a final judgment. Therefore, the plaintiff does not challenge on appeal to this court, and did not before the Appellate Court, the trial court's determination that § 46a-82 (f) barred the vast majority of his allegations.

The plaintiff's surviving allegations that we consider in this opinion stem exclusively from the defendant's participation in the termination of parental rights trial from January through April, 2019, and later on appeal from the trial court's judgments.[2] He alleged that the

---

[2] The parties do not agree about which specific paragraphs of the plaintiff's complaint survived the trial court's dismissal of all allegations that occurred prior to January 12, 2019. The plaintiff, in his primary brief, his reply brief, and at oral argument before this court provides us with at least three

defendant had discriminated against him as a Muslim by introducing false evidence at trial concerning his violent tendencies, eliciting false testimony from its agent, attempting to elicit testimony from his children to substantiate sexual abuse allegations against him, introducing into evidence an email the defendant improperly had solicited from the plaintiff, reversing its initial position at trial that the court should not terminate the parental rights of the plaintiff's non-Muslim wife, and misrepresenting facts in its brief submitted to the Appellate Court. We do not consider the vast majority of the other allegations as discrete acts that occurred prior to January 12, 2019, including those challenging the defendant's *continuous* failure since 2015 to properly oversee the placement of his children with the non-Muslim foster parents.

The defendant moved to reargue the trial court's denial in part of its motion to dismiss and argued for the first time that the litigation privilege barred the plaintiff's allegations, and, thus, that it was absolutely

---

disparate sets of paragraphs that he contends we should consider as timely, at one point contending that we must consider the entire complaint, even those allegations that were dismissed as untimely. The defendant maintains that the only remaining allegations are based on alleged actions taken during the termination of parental rights trial, although it does not specify which paragraphs it admits are timely and survived the trial court's dismissal. The defendant assumes for purposes of its argument that the surviving paragraphs include those that the plaintiff outlined at one point in his primary brief, along with several more.

As we have stated, the plaintiff does not challenge in the present appeal the trial court's timeliness determination, including its rejection of his reliance on the continuing violation doctrine. We therefore disregard the untimely allegations of the complaint, mindful that we must construe the plaintiff's allegations in a manner most favorable to him, including facts necessarily implied from those allegations, and indulge every presumption in favor of jurisdiction. See, e.g., *Deutsche Bank AG* v. *Vik*, 349 Conn. 120, 136–37, 314 A.3d 583 (2024). Indeed, our interpretation is in line with the Appellate Court's recitation of the remaining timely allegations. See *Ammar I.* v. *Dept. of Children & Families*, 220 Conn. App. 77, 87, 91–93, 297 A.3d 269 (2023).

immune from liability for its actions taken in the child protection case. The trial court denied the motion to reargue, concluding that the litigation privilege did not bar the plaintiff's remaining timely allegations. The court determined that, although many of the plaintiff's allegations concerned the defendant's conduct in connection with the neglect, custody, and termination of parental rights proceedings, the plaintiff also complained that the defendant had mistreated him throughout his interactions with the defendant and used the legal process improperly to discriminate against him because he is Muslim. The court further determined that the "plaintiff's discrimination claim is more akin to a claim of vexatious litigation or abuse of process ([to which] the litigation privilege does not apply), as opposed to a claim for defamation or fraud ([to which] the litigation privilege would apply)."

The defendant filed an interlocutory appeal, challenging, among other things,[3] the trial court's determination that the litigation privilege did not bar the plaintiff's discrimination claim. The commission intervened in the appeal and filed a brief in support of the plaintiff's position.

The Appellate Court balanced the competing public policy factors and agreed with the defendant that the

[3] The defendant additionally claimed on appeal that the trial court incorrectly concluded that sovereign immunity did not bar the plaintiff's claim for damages and that the plaintiff had standing to maintain this action following the termination of his parental rights. *Ammar I.* v. *Dept. of Children & Families*, 220 Conn. App. 77, 79–80, 297 A.3d 269 (2023). Because of its conclusion that the trial court incorrectly determined that the litigation privilege did not bar the plaintiff's action, the Appellate Court did not reach these claims. See id., 80 n.2. We likewise do not address these claims because we conclude that the litigation privilege bars the plaintiff's remaining timely allegations stemming from the termination of parental rights trial, they are outside the scope of the question certified for our review; see, e.g., *Ammar I.* v. *Dept. of Children & Families*, 348 Conn. 906, 301 A.3d 1057 (2023); and the parties have not briefed or presented oral argument on these issues. See, e.g., *Martinoli* v. *Stamford Police Dept.*, 350 Conn. 868, 871, 326 A.3d 1104 (2024).

litigation privilege barred the timely allegations in the plaintiff's complaint. See *Ammar I.* v. *Dept. of Children & Families*, 220 Conn. App. 77, 79–80, 297 A.3d 269 (2023). The court reasoned that the statutes supporting the plaintiff's claim, §§ 46a-58 (a) and 46a-71 (a), do not contain elements that support causes of action such as vexatious litigation or abuse of process, which are not barred by the litigation privilege. See id., 89–91. Looking beyond the statutes, the court reasoned that the defendant did not "subvert" the purpose of the child protection litigation because it did not commence the proceeding but, rather, was a statutorily mandated participant. See id., 91–92; see also General Statutes § 46b-129. The court concluded that the litigation privilege barred all of the plaintiff's timely allegations because they concerned the defendant's communications during a judicial proceeding. See *Ammar I.* v. *Dept. of Children & Families*, supra, 91–95. The court reasoned that accepting the plaintiff's contrary claim would potentially open the floodgates for retaliatory litigation against the defendant by disgruntled parents. Id., 97. The court also observed that the plaintiff had raised his discrimination claim in the child protection litigation, including in his appeal challenging the trial court's termination of his parental rights and that both the trial court and Appellate Court had rejected that claim. See id., 98. This certified appeal followed.

I

The litigation privilege is "a long-standing [common-law] rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." (Internal quotation marks omitted.) *Simms* v. *Seaman*, 308 Conn. 523, 537, 69 A.3d 880 (2013). "The privilege clearly applies to every step of the proceeding until [its] final disposition . . . including to statements made in pleadings or other doc-

uments prepared in connection with [the] proceeding."
(Citation omitted; internal quotation marks omitted.)
*Scholz* v. *Epstein*, 341 Conn. 1, 28–29, 266 A.3d 127
(2021).

"Put simply, absolute immunity furthers the public
policy of encouraging participation and candor in judi-
cial and quasi-judicial proceedings. This objective
would be thwarted if those persons whom the common-
law doctrine was intended to protect nevertheless faced
the threat of suit." (Internal quotation marks omitted.)
*Hopkins* v. *O'Connor*, 282 Conn. 821, 828–29, 925 A.2d
1030 (2007). The public policy "rationale underlying
the privilege is grounded upon the proper and efficient
administration of justice. . . . Participants in a judicial
process must be able to testify or otherwise take part
without being hampered by fear of [retaliatory] suits."
(Citation omitted.) Id., 839; see also *Scholz* v. *Epstein*,
supra, 341 Conn. 10. Courts extend the privilege to liti-
gation participants when safeguards other than retalia-
tory lawsuits exist to protect truth-seeking in court,
including the oath witnesses must take, the fear of being
charged with perjury, and the punishment for contempt
of the court. See *DeLaurentis* v. *New Haven*, 220 Conn.
225, 264, 597 A.2d 807 (1991).

Together, the plaintiff and the commission bring a
tripartite challenge to the applicability of the litigation
privilege in this case, arguing that (A) the plaintiff's
remaining timely discrimination allegations are not
barred by the litigation privilege, (B) the defendant is
not entitled to invoke the litigation privilege because
it is a governmental entity, and (C) by enacting antidis-
crimination laws, the legislature abrogated the litigation
privilege in the context of discrimination claims. None
of these arguments persuades us.

A

Although not dispositive, the application of the litiga-
tion privilege largely turns on whether the plaintiff's

claim challenges the commencement of the underlying judicial proceeding for an improper (not privileged) purpose, as opposed to conduct by a party or an attorney during the properly commenced (privileged) judicial proceeding. Our decisions have expanded the litigation privilege beyond defamation claims "to bar a variety of retaliatory civil claims arising from communications or communicative acts occurring in the course of a judicial or quasi-judicial proceeding, including, but not limited to, claims for tortious interference, intentional infliction of emotional distress, fraud, and violations of [the Connecticut Unfair Trade Practices Act, § 42-110a et seq.]." *Deutsche Bank AG* v. *Vik*, 349 Conn. 120, 137, 314 A.3d 583 (2024); see also *Dorfman* v. *Smith*, 342 Conn. 582, 592, 271 A.3d 53 (2022). In doing so, we have "sought to ensure that the conduct that [the] absolute immunity [afforded by the litigation privilege] is intended to protect, namely, participation and candor in judicial proceedings, remains protected regardless of the particular tort alleged in response to the words used during participation in the judicial process." *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 628, 79 A.3d 60 (2013). We have applied the litigation privilege to claims "premised on factual allegations that challenge the defendant's participation in a properly brought judicial proceeding" because that claim "does not involve consideration of whether the underlying purpose of the litigation was improper . . . *even if the plaintiff alleges that the [litigant's] conduct constituted an improper use of the courts*." (Emphasis added.) *Scholz* v. *Epstein*, supra, 341 Conn. 14.

On the other hand, we have "refused to apply absolute immunity to causes of action alleging the improper use of the judicial system," including claims for abuse of process, vexatious litigation, malicious prosecution, and retaliatory litigation in violation of General Statutes § 31-290a "because these claims seek to hold an individ-

ual liable for . . . the improper use of the judicial process for an illegitimate purpose, namely, to inflict injury [on] another individual in the form of unfounded [legal] actions." (Internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 138; see also *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 627. "[I]t is not enough for the plaintiff to allege that the misconduct at issue constituted an abuse of the legal system, but, rather, the cause of action itself must challenge the *purpose* of the underlying litigation." (Emphasis in original.) *Scholz* v. *Epstein*, supra, 341 Conn. 14. Because the litigation privilege implicates subject matter jurisdiction, we apply plenary review to the trial court's decision, indulging every presumption in favor of jurisdiction, construing the complaint in the plaintiff's favor, and taking the allegations as true, including facts necessarily implied. See *Deutsche Bank AG* v. *Vik*, supra, 136–37.

No appellate authority from this state addresses whether the litigation privilege bars a religious discrimination claim arising from an adverse party's words or conduct in a legal proceeding. Therefore, to determine whether the litigation privilege applies, we must carefully balance all competing public policies implicated by the specific claim at issue, aided by the instructive considerations we identified in *Simms* v. *Seaman*, supra, 308 Conn. 523: whether the alleged conduct (1) subverts the underlying purpose of a judicial proceeding in a similar way to how conduct constituting abuse of process and vexatious litigation does; (2) is similar in essential respects to defamatory statements, given that the privilege bars defamation actions; and (3) may be adequately addressed by other available remedies. Id., 545; see also *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 139. We conclude that all factors—those outlined by *Simms* and those unique to this case—compel a conclusion that the litigation privilege bars the remaining

timely allegations of the plaintiff's discrimination claim in the present case.

As we described, the plaintiff's surviving timely allegations that we consider are that the defendant discriminated against him during the termination of parental rights trial because he is a Muslim by introducing false evidence, eliciting false testimony, inappropriately questioning his children, introducing an email the defendant improperly solicited from him, reversing its initial position at trial that the court not terminate the parental rights of his non-Muslim wife, and later misrepresenting facts in its brief submitted to the Appellate Court. He alleges that the defendant's litigation tactics were designed to separate him from his children because of his Muslim religion in violation of §§ 46a-58 (a) and 46a-71 (a). To prevail on his claim, the defendant must establish that he was a member of a protected class (a Muslim), he was deprived of a right secured by law (constitutional guarantee to parent one's children), and the deprivation was motivated by an intent to discriminate. See generally *Connecticut Judicial Branch* v. *Gilbert*, 343 Conn. 90, 102–104, 272 A.3d 603 (2022). Balancing the criteria *Simms* described, we conclude that the Appellate Court correctly concluded that the litigation privilege applies to the type of claim that the plaintiff has brought against the defendant.

Primarily, the plaintiff's claim is akin to a claim of defamation, which challenges statements made during a proceeding, and is dissimilar to a claim of vexatious litigation, which challenges the purpose for which an underlying action was commenced. His claim pertains exclusively to the words and conduct of the defendant's agents at his termination of parental rights trial, and there are no remaining timely allegations challenging the origin of the termination proceedings. In this case, the plaintiff's timely allegations do not challenge the defendant's commencement of the termination of parental

rights proceeding for an improper discriminatory purpose because his children's attorneys, not the defendant, initiated those proceedings, which began in November, 2018, prior to January 12, 2019. See *In re Omar I.*, supra, 197 Conn. App. 510. The defendant's introduction of allegedly false evidence, elicitation of false testimony, and misrepresentation of facts in briefs are privileged because that conduct occurred during the litigation, "even if the communications [were] false, extreme, outrageous, or malicious." *Dorfman* v. *Smith*, supra, 342 Conn. 601–602; see also *Simms* v. *Seaman*, supra, 308 Conn. 525–26, 531 (defendants were entitled to litigation privilege for knowingly false representations to trial court); *Hopkins* v. *O'Connor*, supra, 282 Conn. 826 (" 'communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy' ").[4]

The plaintiff describes his claim as alleging that the defendant's litigation conduct subverted the underlying purpose of the termination of parental rights proceeding, but that is not sufficient to avoid the application of the litigation privilege. We have consistently rejected attempts to evade application of the privilege when parties have characterized claims in this fashion. See, e.g., *Dorf-*

---

[4] The defendant briefly notes that several of the plaintiff's allegations are too vague and conclusory to assess whether they meet the second *Simms* consideration, and it focuses its analysis of those allegations on the other *Simms* considerations and competing interests at issue in this particular context. See, e.g., *Dorfman* v. *Smith*, supra, 342 Conn. 593 (*Simms* considerations are " 'simply instructive,' and courts must focus on 'the issues relevant to the competing interests in each case' in light of the 'particular context' of the case"); *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 634 (holding that litigation privilege did not apply despite fact that one *Simms* consideration weighed against this court's conclusion). Although several of the plaintiff's timely allegations lack exact specificity, the basis of his claim as a whole— the defendant's allegedly discriminatory conduct at his termination of parental rights trial—is more than sufficient for us to analyze the second *Simms* factor. See footnote 2 of this opinion.

*man* v. *Smith*, supra, 342 Conn. 599 ("allegations of the improper use of judicial procedure do not satisfy the requirement that the plaintiff's cause of action must itself challenge the purpose of the underlying litigation or litigation procedure"); *Scholz* v. *Epstein*, supra, 341 Conn. 14 ("it is not enough for the plaintiff to allege that the misconduct at issue constituted an abuse of the legal system, but, rather, the cause of action itself must challenge the *purpose* of the underlying litigation" (emphasis in original)); *Simms* v. *Seaman*, supra, 308 Conn. 546 (litigation privilege barred claim that defendant's attorneys engaged in fraud during litigation because claim of fraud "does not require consideration of whether the underlying purpose of the litigation was improper"). The simple reason for our strict application of the privilege in this way is because "any plaintiff could pierce the litigation privilege with any cause of action by merely including allegations that a defendant's conduct constituted an abuse of the judicial system." *Dorfman* v. *Smith*, supra, 599; see also *Scholz* v. *Epstein*, supra, 16 (recognizing that "litigation privilege would be essentially void" if court accepted plaintiff's attempt to characterize litigation misconduct as challenging underlying purpose for allegation at issue). Accordingly, our precedent directs that the litigation privilege protects the defendant's alleged trial misconduct, even though the plaintiff contends that the misconduct undermined the purpose of the proceeding.

Moreover, the elements of the plaintiff's discrimination claim do not include safeguards to protect against inappropriate retaliatory litigation such as the safeguards we have found to provide sufficient protection in the context of a vexatious litigation claim: for example, that the prior action was brought without probable cause or that it terminated in the plaintiff's favor. See *Dorfman* v. *Smith*, supra, 342 Conn. 607; see also *Scholz* v. *Epstein*, supra, 341 Conn. 21 (statutory theft claim

does not provide same level of protection as does vexatious litigation claim). As with the plaintiff's discrimination claim, "it is easy to allege, but more difficult to prove, that a defendant intentionally made misrepresentations and advanced false allegations in pleadings." *Dorfman* v. *Smith*, supra, 610; see also *Crawford-El* v. *Britton*, 523 U.S. 574, 584–85, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998) ("[b]ecause an official's state of mind is 'easy to allege and hard to disprove,' insubstantial claims that turn on improper intent may be less amenable to summary disposition than other types of claims against government officials").

Without the same rigorous pleading requirements as those applicable to a vexatious litigation or abuse of process claim, we, like the Appellate Court, are wary that excepting the defendant's alleged litigation misconduct from the litigation privilege "could open the floodgates to a wave of retaliatory litigation against the defendant and its employees by disgruntled parents who have had their children removed from their care or who have had their parental rights terminated." *Ammar I.* v. *Dept. of Children & Families*, supra, 220 Conn. App. 97; see also *Dorfman* v. *Smith*, supra, 342 Conn. 610 (declining to extend litigation privilege to claim of breach of implied covenant of good faith and fair dealing could have "potential to open the floodgates to retaliatory actions every time a plaintiff prevails in an underlying action in which the defendant [has] raised an unsuccessful special defense or made an allegation in a pleading that was at odds with the verdict"); *Simms* v. *Seaman*, supra, 308 Conn. 568 (abrogating privilege for fraud claims "could open the floodgates to a wave of litigation in this state's courts challenging an attorney's representation, especially in foreclosure and marital dissolution actions in which emotions run high and there may be a strong motivation on the part of the losing party to file a retaliatory lawsuit"). Failing to

apply the litigation privilege for the defendant's actions taken in connection with a termination of parental rights proceeding would hamper the defendant's mission to protect children who are abused, neglected, or uncared for; see General Statutes § 17a-3 (a); out of fear of future retaliatory litigation by disgruntled parents.

Next, the plaintiff's discrimination claim may be adequately addressed by other available remedies. In fact, as the Appellate Court aptly noted, the plaintiff had raised his religious discrimination claim throughout the underlying child protection proceedings, including at the termination of parental rights trial. The trial court considered and rejected those claims, and the Appellate Court affirmed those judgments. See *In re Omar I.*, supra, 197 Conn. App. 555, 582–87 and nn.27–29; see also id., 588–92, 597. The plaintiff again sought to raise his religious discrimination claim in a petition for a new termination of parental rights trial, but the trial court struck that petition because the "[e]vidence of these facts could have been presented at trial, and indeed, as the petition itself states, many of these claims were raised at trial and on appeal." *In re Omar I.*, Docket Nos. H14-CP-20-013333-A, H14-CP-20-013334-A and H14-CP-20-013335-A, 2021 WL 3727802, *5 (Conn. Super. July 27, 2021), rev'd on other grounds, 214 Conn. App. 1, 297 A.3d 320, cert. denied, 345 Conn. 913, 283 A.3d 981 (2022).

We recognize that the plaintiff did not (and could not) seek damages for his discrimination claim because he advanced them defensively in the termination proceedings.[5] Nevertheless, the trial court and Appellate Court have rejected the plaintiff's discrimination claim; indeed, the trial court likely could not have terminated

[5] It has yet to be finally resolved in this case whether sovereign immunity bars the plaintiff's claim for damages under §§ 46a-58 (a) and 46a-71 (a). See footnote 3 of this opinion.

his parental rights if it found as a factual matter that he had been subjected to the discrimination by the defendant. See *In re Elijah C.*, 326 Conn. 480, 508–10, 165 A.3d 1149 (2017) (defendant's failure to abide by Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., would likely have precluded reasonable reunification efforts finding). If the plaintiff had prevailed on his discrimination claim in the child protection case, he could have attempted to use that finding to seek authorization from the claims commissioner to bring a vexatious litigation or abuse of process claim, to which the litigation privilege does not apply, against the state in court for the defendant's actions. See General Statutes § 4-160 (a).

The plaintiff and the commission, which filed a brief, rely heavily on our decision in *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 616, to argue that the discrimination claim at issue is not subject to the litigation privilege. In *MacDermid, Inc.*, the plaintiff employer brought an action against a former employee, alleging civil theft, fraud, unjust enrichment, and conversion, based on the employee's admission that he had signed a termination agreement with the employer but never intended to release his claim for workers' compensation benefits. Id., 621–22. The employee filed a counterclaim, alleging that, in violation of § 31-290a, the employer had initiated the action in retaliation for the employee's exercise of rights under the Workers' Compensation Act (act), General Statutes § 31-275 et seq. Id., 622. The employer moved to dismiss the counterclaim, arguing that it enjoyed absolute immunity from the employee's claim based on the litigation privilege. Id. We held that the litigation privilege did not bar the employee's counterclaim, reasoning that the employee's retaliation counterclaim mirrored the purpose of a vexatious litigation claim because § 31-290a was "designed to prevent, or hold the employer liable for, the improper use of the

judicial process for the illegitimate purpose of retaliating against an employee for [the] exercise of his rights under the act." Id., 631. We held that this narrow type of § 31-290a retaliatory counterclaim under the act would be "*extremely limited* in type and circumstance"; (emphasis in original; internal quotation marks omitted) id., 636; and determined that affording absolute immunity would incentivize retaliatory litigation, which the legislature clearly had intended to prevent by enacting § 31-290a. See id., 638–40. In other words, in creating the cause of action pursuant to § 31-290a, the legislature was determined to proscribe precisely the conduct that the employer had allegedly undertaken: retaliation, including in court or in the workers' compensation forum, for employees' pursuit of workers' compensation benefits. See id., 640.

In the present case, in contrast to § 31-290a, the legislature in enacting §§ 46a-58 (a) and 46a-71 (a) did not specifically indicate an intent to prohibit retaliatory litigation or the use of the judicial process for an improper purpose. Moreover, unlike in *MacDermid, Inc.*, in which the plaintiff initiated the retaliatory action under § 31-290a in a counterclaim, the plaintiff's discrimination claim in the present case does not allege that the defendant *initiated* the child protection proceedings in retaliation against him, and permitting his action would open the door to abundant actions. See *Dorfman* v. *Smith*, supra, 342 Conn. 598 (distinguishing *MacDermid, Inc.*, on same ground).

Finally, our holding in the present case that the litigation privilege bars the plaintiff's discrimination claim founded on actions taken in connection with a child protection trial is in accord with precedent across the country. See, e.g., *Spencer* v. *Omega Laboratories, Inc.*, Docket No. 20-CV-03747 (JMA) (ARL), 2024 WL 3675856, *23 (E.D.N.Y. August 6, 2024) (New York litigation privilege protected witness from lawsuit based on

allegedly fraudulent testimony during child abuse proceedings), appeal filed (2d Cir. September 12, 2024) (No. 24-2394); *Wilson* v. *New Jersey Division of Child Protection & Permanency*, Docket No. 13-CV-3346, 2019 WL 13260178, *24–28 (D.N.J. August 23, 2019) (New Jersey litigation privilege barred claim under 42 U.S.C. § 1983 alleging submission of false reports by psychological expert in termination of parental rights proceeding); *Borden* v. *Malone*, 327 So. 3d 1105, 1115–17 (Ala. 2020) (litigation privilege protected allegedly defamatory letter submitted by clinician in child custody action); *Falcon* v. *Long Beach Genetics, Inc.*, 224 Cal. App. 4th 1263, 1275, 169 Cal. Rptr. 3d 497 (2014) (litigation privilege barred claim that laboratory submitted "declaration testimony" of false DNA test results in paternity proceeding); *M.D.* v. *New Jersey Division of Youth & Family Services*, Docket No. A-4342-09T3, 2011 WL 2341256, *4 (N.J. Super. App. Div. June 15, 2011) (litigation privilege protected testimony by child protection services psychologist during abuse, neglect case). Contra *Mason* v. *Mason*, 19 Wn. App. 2d 803, 840, 843, 497 P.3d 431 (2021) (litigation privilege did not bar claims alleging that former husband and his attorney inappropriately submitted parenting plan), review denied, 199 Wn. 2d 1005, 506 P.3d 638 (2022), and review dismissed, 199 Wn. 2d 1005, 506 P.3d 638 (2022). These cases protected the actions of participants in child protection proceedings because they were made during, or as a part of, the judicial process. The same is true of the plaintiff's timely allegations here, which challenge as false or inappropriate the defendant's introduction of evidence, eliciting of testimony, questioning of the defendant's children, and facts contained in its brief submitted to the Appellate Court. We accordingly conclude that the litigation privilege applies to the plaintiff's timely allegations.

B

The commission contends that the litigation privilege traditionally is understood as a form of personal immunity and that it is not applicable to the defendant as an impersonal entity. Although the litigation privilege "originated in response to the need to bar persons accused of crimes from suing their accusers for defamation," it developed to "bar defamation claims *against all participants in judicial proceedings*, including judges, attorneys, parties, and witnesses." (Emphasis added; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 627; see also *Simms* v. *Seaman*, supra, 308 Conn. 536–38 (litigation privilege in Connecticut has protected participants in proceedings since at least 1894). The balance of interests that justify affording immunity to each of the actors in the courtroom—attorneys, judges, jurors, witnesses, and parties—differs slightly, but each has been described as coming under the umbrella of the "litigation privilege," and each shares the same overarching policy: that participants in a judicial proceeding should not fear that they will be sued for that participation. We have never held that the legal status of a defendant—such as an individual or a corporation—has ever been relevant to whether the privilege applies. Instead, for example, we have extended the privilege to an impersonal entity, in the form of an insurance company in *Dorfman* v. *Smith*, supra, 342 Conn. 585; see also *Kenneson* v. *Eggert*, 196 Conn. App. 773, 775, 230 A.3d 795 (2020) (litigation privilege protected claim against insurance company and attorney); *Perugini* v. *Giuliano*, 148 Conn. App. 861, 874–75, 89 A.3d 358 (2014) (litigation privilege protected claim against law firm and lawyer). In light of our prior jurisprudence, we decline to adopt a new rule exempting all nonpersons from the litigation privilege.

Although the commission acknowledges that courts have applied the litigation privilege to a governmental

agency such as the defendant, it suggests that we "should think twice before joining" those courts. See generally *Probst* v. *Ashcroft*, 25 Fed. Appx. 469, 470–71 (7th Cir. 2001) (litigation privilege barred claims challenging actions of governmental entities during racial discrimination lawsuit); *Taylor* v. *McNichols*, 149 Idaho 826, 836, 243 P.3d 642 (2010) (" '[a]t common law, the litigation privilege blanketed all participants in the court system; private attorneys were treated no differently than judges, *government lawyers*, and witnesses' " (emphasis added)); *Loigman* v. *Township*, 185 N.J. 566, 582, 889 A.2d 426 (2006) (litigation privilege protected township and its attorney from 42 U.S.C. § 1983 claim). The commission provides us with no authority in support of the premise that, unlike any other participant in a legal proceeding, a governmental entity is not entitled to the litigation privilege, and we are not persuaded that we should treat the defendant in the present case any differently. As we explained in part I A of this opinion, it is imperative that the defendant remain free to act in the best interests of children during a legal proceeding without fear of future retaliatory lawsuits. This justification may be even stronger for the defendant, compared to other private litigants, because the defendant is a statutorily mandated participant in a termination of parental rights trial; see General Statutes § 46b-129; its involvement is frequent, and child protection proceedings often are tumultuous. We have used these same justifications to support affording absolute judicial immunity to mandated participants in child protection proceedings. See, e.g., *Carrubba* v. *Moskowitz*, 274 Conn. 533, 548–49, 877 A.2d 773 (2005) (granting court-appointed attorneys for minor children absolute quasi-judicial immunity as necessary to ensure proper function without concern about possible later harassment and intimidation from dissatisfied parents); see also *Walden* v. *Wishengrad*, 745 F.2d 149, 152 (2d Cir.

1984) (state's representative in child protection proceedings is absolutely immune because of "the need to pursue protective child litigation vigorously and . . . free from fear of potential lawsuits by individuals allegedly harmed by her actions"). Indeed, the state already is entitled to greater protection from certain claims arising from litigation by way of sovereign immunity for many of the same policy reasons. See, e.g., *Dorfman* v. *Smith*, supra, 342 Conn. 591 (purpose of litigation privilege for individuals is same as that underlying state's sovereign immunity). Thus, we conclude that the defendant, as a governmental entity, is entitled to invoke the litigation privilege in connection with its in-court conduct the same as any other litigant.

C

The commission further argues that, by passing this state's antidiscrimination statutes, the legislature has enacted a strong public policy that excepts discrimination claims from the litigation privilege. We agree with the commission that chapter 814c of the General Statutes, the law governing human rights and opportunities, serves an important remedial purpose. See *Connecticut Judicial Branch* v. *Gilbert*, supra, 343 Conn. 102–104. But to carve these discrimination claims out from the common-law litigation privilege, the legislation must be more than remedial; rather, the legislature must plainly and clearly express its intent to abrogate the privilege. See, e.g., *Dorfman* v. *Smith*, supra, 342 Conn. 609; *Hopkins* v. *O'Connor*, supra, 282 Conn. 843. The commission does not direct us to, and we have not found, any language in §§ 46a-58 or 46a-71, or elsewhere in chapter 814c, by which the legislature expressly abrogated the litigation privilege. Moreover, despite the profound importance of antidiscrimination statutes, courts in other jurisdictions have applied the litigation privilege to discrimination claims arising from participation in litigation. See, e.g., *Osborne* v. *Pleasanton Automotive*

*Co.*, *LP*, 106 Cal. App. 5th 361, 386–93, 327 Cal. Rptr. 3d 46 (2024) (litigation privilege protected letter sent in anticipation of litigation supporting employment discrimination claim); *Myrick* v. *Harvard University*, Docket No. 21-P-973, 2022 WL 5237494, *1 (Mass. App. October 6, 2022) (decision without published opinion, 101 Mass. App. 1119, 196 N.E.3d 1277) (litigation privilege barred employment discrimination claim founded on actions of employer in litigation), review denied, 491 Mass. 1102, 200 N.E.3d 516 (2022); *Peterson* v. *Ballard*, 292 N.J. Super. 575, 579, 589, 679 A.2d 657 (App. Div.) (litigation privilege barred retaliatory discrimination claim involving attorney's interview of witness in prior action), cert. denied, 147 N.J. 260, 686 A.2d 761 (1996); see also *S.B.* v. *Goshen Central School District*, Docket No. 20-CV-09167 (PMH), 2022 WL 4134457, *16 n.18 (S.D.N.Y. September 12, 2022) (litigation privilege barred disability discrimination claim challenging litigation conduct).

In sum, carefully balancing the various interests in play, we conclude that, under the narrow circumstances of the present case, the defendant is entitled to the litigation privilege for its allegedly discriminatory actions taken during the termination of parental rights trial and the corresponding appeal.

II

Our opinion does not address the plaintiff's allegations that the trial court previously dismissed as untimely, including those attacking the defendant's out-of-court conduct such as its supervision and placement of the plaintiff's children with the foster parents. Nor does it address any of the many grounds raised in the defendant's motion to dismiss. We consequently hold only that the trial court lacked subject matter jurisdiction over the plaintiff's timely allegations that pertained to

the defendant's actions during the plaintiff's termination of parental rights trial because of the privilege.

Our analysis is therefore mostly consistent with that of the Appellate Court, departing only from the apparent scope of its ruling to the extent that it improperly remanded the case to the trial court with direction to dismiss the entirety of the plaintiff's complaint, which the trial court prematurely carried out. When the defendant in its motion to reargue raised the litigation privilege for the first time, the trial court had *already* dismissed the vast majority of the plaintiff's allegations as untimely. The trial court denied the defendant's motion to reargue on the ground that the litigation privilege did not bar the plaintiff's remaining timely allegations. In the defendant's interlocutory appeal, the Appellate Court disagreed with that conclusion and, rather than direct the trial court to dismiss the remaining timely allegations of the complaint; see *Ammar I.* v. *Dept. of Children & Families*, supra, 220 Conn. App. 80 n.2; remanded the case to the trial court with direction to "grant the defendant's motion to dismiss the complaint in its entirety." Id., 102. In response to the remand order, but during the pendency of the automatic appellate stay and prior to the plaintiff's petition for certification to appeal, the trial court rendered judgment dismissing the plaintiff's action in its entirety on June 26, 2023. See Practice Book §§ 71-6 (b) and 84-3 (a).

The Appellate Court's incorrect remand order and the trial court's premature compliance with that court's order has hindered the plaintiff's ability to seek appellate review of the trial court's dismissal of the majority of his allegations as untimely. Therefore, to promote judicial economy and the fair resolution of the plaintiff's claims, we, pursuant to Practice Book § 60-2, sua sponte direct the Appellate Court to vacate the trial court's June 26, 2023 judgment of dismissal rendered during

the pendency of the appellate stay and to order the trial court on remand to render a new judgment of dismissal from which the plaintiff may have the opportunity to take an appeal challenging the trial court's granting of the defendant's motion to dismiss on timeliness grounds.

The judgment of the Appellate Court is reversed to the extent that the court directed the trial court on remand to grant the defendant's motion to dismiss in its entirety, and the case is remanded to the Appellate Court with direction to vacate the trial court's June 26, 2023 judgment of dismissal and to remand the case to the trial court with direction to render a new judgment of dismissal; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.